MORGAN, LEWIS & BOCKIUS LLP
DANIEL JOHNSON, JR., State Bar No. 57409
MICHAEL J. LYONS, State Bar No. 202284
HARRY F. DOSCHER, State Bar No. 245969
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:  djjohnson@MorganLewis.com
          mlyons@MorganLewis.com
          hdoscher@MorganLewis.com

Attorneys for Plaintiff and Counterdefendant
FINISAR CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff and Counterdefendant,<br><br>vs.<br><br>SOURCE PHOTONICS, INC., a Delaware corporation, MRV COMMUNICATIONS, a Delaware corporation, NEOPHOTONICS CORPORATION, a Delaware corporation, and OPLINK COMMUNICATIONS, INC., a Delaware corporation,<br><br>Defendants and Counterclaimants. | Case No. C-10-00032 WHA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN COUNTERCLAIMS, AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**<br><br>Date:  May 20, 2010<br>Time:  8:00 a.m.<br>Dept.: Courtroom 9, 19th Floor<br>Judge:  Hon. William Alsup |

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/21669178.1

PLAINTIFF'S MOTION TO DISMISS
(C-10-00032 WHA)

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 2

II.     COUNTERCLAIM ALLEGATIONS ................................................................. 5

III.    ARGUMENT IN SUPPORT OF MOTION TO DISMISS
        COUNTERCLAIMS ............................................................................................ 7

        A.   The Applicable Standard For a Rule 12(b)(6) Motion to Dismiss ........................ 7

        B.   Defendants Have Not Alleged Antitrust Injury, And Such Injury Is a
             Logical Impossibility In The Context of This Case .............................................. 8

        C.   Defendants Have Not Alleged Facts That Would Establish Plausibly That
             Finisar's Licensing Offers Were "Unreasonable." ............................................... 10

        D.   Defendants Have Not Alleged Facts Making It Plausible To Believe That
             Finisar Has Now, Or Has A Dangerous Probability of Achieving,
             Monopoly Power In The Alleged Relevant Markets ........................................... 12

             1.   Defendants' Monopolization Counterclaims Fail As A Matter of
                  Law ........................................................................................................... 12

             2.   Defendants' Attempted Monopolization Counterclaims Also Fail
                  As A Matter of Law .................................................................................. 13

        E.   Defendants' Allegations that Finisar Has Engaged in Unfair Competition in
             violation of California Business and Professions Code § 17200 et seq. Fail
             as a Matter of Law ............................................................................................... 15

        F.   Defendants' Allegations that Finisar Has Engaged in Patent Misuse Fail as
             a Matter of Law ................................................................................................... 17

        G.   Defendants' Breach of Contract Counterclaims Fail as a Matter of Law ............ 19

IV.     IN THE ALTERNATIVE, DEFENDANTS' NON-PATENT
        COUNTERCLAIMS SHOULD BE SEVERED AND STAYED PENDING
        RESOLUTION OF FINISAR'S PATENT CLAIMS ....................................... 19

V.      ARGUMENT IN SUPPORT OF MOTION TO STRIKE CERTAIN
        AFFIRMATIVE DEFENSES .......................................................................... 21

        A.   The Applicable Standard For a Rule 12(f) Motion to Strike ............................... 21

        B.   Certain Affirmative Defenses Raised by Defendants Are Legally
             Insufficient .......................................................................................................... 22

             1.   Defendants Insufficiently Plead a Statute of Limitations Affirmative
                  Defense ..................................................................................................... 22

             2.   Defendants Insufficiently Plead Prosecution History Estoppel and
                  Estoppel Affirmative Defenses .................................................................. 23

             3.   Defendants Insufficiently Plead a Laches Affirmative Defense ................. 24

             4.   "Other Defenses" Is Not a Legally Recognized Affirmative Defense ...... 24

VI.     CONCLUSION .................................................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

i

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

# TABLE OF AUTHORITIES

## Cases

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
  52 F.3d 1062, 1063 (Fed. Cir. 1995)................................................................................ 22

*Albillo v. Intermodal Container Services, Inc.*,
  114 Cal. App. 4th 190, 8 Cal. Rptr. 3d 350 (2003) ........................................................ 14

*Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*,
  89 F.3d 1399, 1403 (9th Cir. 1996)................................................................................... 6

*Arthur S. Langenderfer, Inc., v. S.E. Johnson Co.*,
  917 F.2d 1413, 1431 (6th Cir. 1990)............................................................................... 10

*Ashcroft v. Iqbal*,
  --- U.S.----, 129 S.Ct. 1937, 1949 (May 18, 2009) ......................................................... 6

*ASM America, Inc. v. Genus, Inc.*,
  No. 01-2190 EDL, 2002 WL 24444, 2002 U.S. Dist. LEXIS 1351 *20-21 (N.D. Cal. Jan. 9,
  2002) ............................................................................................................................... 19

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 329, 339 (1990)................................................................................................... 7

*B. Braun Med., Inc. v. Abbott Labs.*,
  124 F.3d 1419, 1428 (Fed. Cir. 1997)............................................................................. 16

*Batdorf v. Trans Union*,
  2000 U.S. Dist. LEXIS 6796 (N.D. Cal. May 8, 2000) ...................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 6, 7, 21

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)............................................................................................ 14

*Brown Shoe Co. v. United States*,
  370 U.S. 294, 320 (1962).............................................................................................. 2, 13

*Brunswick Corp. v. Reigel Textile Corp.*,
  752 F.2d 261, 265 (7th Cir. 1984).................................................................................... 12

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340, 1372 (Fed. Cir. 1998).............................................................................. 17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163, 180 (1999) ........................................................................................ 14, 15

*Conley v. Gibson*,
  355 U.S. 41, 47 (1957)....................................................................................................... 6

*Daugherty v. American Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824, 837, 51 Cal. Rptr. 3d 118 (2006).............................................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

ii

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

*Ellingston Timber Company v. Great Northern Rwy. Co.*,
    424 F.2d 497, 499 (9th Cir.)..................................................................................................... 19

*Enercon GMBH v. Erdman*,
    13 Fed. Appx. 651, 652 (9th Cir. 2001) ................................................................................. 16

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524, 1527 (9th Cir. 1993).................................................................................... 21

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*,
    60 F.3d 770, 773 (Fed. Cir. 1995)........................................................................................ 23

*General Patent Corp. v. Hayes Microcomputer*,
    No. 97-429, 1997 WL 1051899 ............................................................................................ 19

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367, 372 (9th Cir. 2003)..................................................................................... 8, 9

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
    609 F. Supp. 2d 988, 1023 (N.D. Cal. 2009) ................................................................. 15, 17

*In re Ditropan XL Antitrust Litigation*,
    529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) ..................................................................... 15

*In re Innotron Diagnostics*,
    800 F.2d 1077, 1084 (Fed. Cir. 1986)............................................................................. 18, 19

*In re Netflix Antitrust Litig.*,
    506 F. Supp. 2d 308, 314 (N.D. Cal. 2007) ........................................................................... 9

*Kendall v. Visa USA, Inc.*,
    518 F.3d 1042, 1047 (9th Cir. 2008)................................................................................. 7, 13

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) ...................................................................... 14

*Leinoff v. Louis Milona & Sons, Inc.*,
    726 F.2d 734, 741 (Fed. Cir. 1984)...................................................................................... 21

*Pharmacia, AB v. Hybritech, Inc.*,
    224 U.S.P.Q. (BNA) 975 (S.D. Cal. 1984) ........................................................................... 19

*Qarbon v. eHelp Corp.*,
    315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) ................................................................ 21, 22

*Rambus v. FTC*,
    522 F.3d 456, 464 (D.C. Cir. 2008) ................................................................................ 12, 15

*Scripps Clinic v. Superior Court*,
    108 Cal. App. 4th 917, 938 (2003) ....................................................................................... 14

*Spectrum Sports v. McQuillan*,
    506 U.S. 447, 456 (1993) ................................................................................................... 3, 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

iii

*Sun Microsystems, Inc. v. Datram Corp.*,
   No. CIV. 96-20708 SW, 1997 WL 50272, at *4 (N.D. Cal. 1997) .......................................... 23

*Symantec Corp. v. Computer Associates Int'l, Inc.*,
   522 F.3d 1279, 1294 (Fed. Cir. 2008) ................................................................................... 23

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
   424 F.3d 1179, 1184 (Fed. Cir. 2005) ................................................................................... 16

*Walker v. Geico Gen. Ins. Co.*,
   558 F.3d 1025, 1027 (9th Cir. 2009) ...................................................................................... 16

*Windsurfing Intern. Inc. v. AMF, Inc.*,
   782 F.2d 995, 1001 (Fed. Cir. 1986) ...................................................................................... 16

**Statutes**

35 U.S.C. § 286 ............................................................................................................................. 21

Cal. Bus. & Prof. Code § 17200 ................................................................................................... 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 1

Fed. R. Civ. P. 12(f) ........................................................................................................................ 1

Fed. R. Civ. P. 42(b) ................................................................................................................. 1, 19

Section 2 of the Sherman Act, 15 U.S.C. § 2 .......................................................................... 1, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

iv

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1

## <u>NOTICE OF MOTION</u>

2      PLEASE TAKE NOTICE that on May 20, 2010, at 8:00 a.m., or as soon thereafter as this

3   matter may be heard, in Courtroom 9, 19th Floor of the United States District Court for the

4   Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San

5   Francisco, California, the Honorable William Alsup presiding, Plaintiff and Counterdefendant

6   Finisar Corporation ("Finisar") will and hereby does move the Court for an order pursuant to Fed.

7   R. Civ. P. 12(b)(6) dismissing Defendants' Counterclaims of monopolization and attempted

8   monopolization in violation of Section 2 of the Sherman Act, patent misuse, breach of contract,

9   and unfair competition raised in Defendants' First Amended Answers To Complaint And

10   Counterclaims ("Counterclaims") against Finisar.  Finisar further moves, *in the alternative*,

11   pursuant to Fed. R. Civ. P. 42(b) to sever Defendants' Counterclaims of monopolization and

12   attempted monopolization in violation of Section 2 of the Sherman Act, patent misuse, breach of

13   contract, and unfair competition and to stay those Counterclaims pending resolution of Finisar's

14   patent infringement claims.  Finally, Finisar moves the Court for an order pursuant to Fed. R. Civ.

15   P. 12(f) striking certain Affirmative Defenses raised by Defendants in their First Amended

16   Answers to Finisar's Complaint.  This motion is based on this Notice of Motion and Motion, the

17   accompanying Memorandum of Points and Authorities in Support thereof, all pleadings and

18   papers filed in this action, and upon such other matters as may be presented to the Court at the

19   time of the hearing.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1    <u>**MEMORANDUM OF POINTS AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3    Defendants argue that Finisar violated the antitrust laws by offering them a license for

4    Finisar's patented technology at rates higher than they wished to pay.  They claim—in conclusory

5    fashion—that Finisar's licensing offers were not "reasonable" and therefore violated assurances

6    Finisar made to a standard setting organization to offer licenses to a subset of claims in some of

7    Finisar's asserted patents on reasonable and non-discriminatory ("RAND") terms.  Defendants

8    flatly refused to take a license from Finisar without making any counter-offer or even attempting

9    to negotiate different terms; instead, they filed a series of Counterclaims in this suit seeking to

10   impose treble damages on Finisar for making them a licensing offer they did not like.

11   Importantly, Defendants do not allege that they were ever willing to accept a license to

12   Finisar's patents on *any* terms, much less on objectively reasonable or RAND terms.  As such,

13   Defendants cannot claim to have been harmed by Finisar's licensing offer.  Absent an allegation

14   that Defendants are or were willing to enter into a license on RAND terms, there can be no

15   actionable antitrust harm.

16   To plead a viable antitrust claim, Defendants must plausibly allege (1) that Finisar

17   engaged in anti-competitive or exclusionary conduct, (2) that this improper conduct led to Finisar

18   achieving "monopoly power" or created a "dangerous probability" that Finisar will achieve

19   "monopoly power" in a properly defined market, and (3) that Defendants have suffered antitrust

20   injury.  The allegations made in the Defendants' Counterclaims – even assuming they are true –

21   fail to meet any of these essential antitrust elements, requiring their dismissal.

22   ***First,*** Defendants have not plausibly alleged that Finisar's offers of a license were

23   objectively unreasonable.  Defendants admit that Finisar licenses its digital diagnostic technology

24   to other optical transceiver manufacturers and make no allegations that those licenses are

25   unreasonable.  Defendants' allegations that they found Finisar's offers of a license to be

26   "unreasonable" in light of their individual profit margins is irrelevant to whether the offers were

27   objectively unreasonable and to whether Finisar has violated the antitrust laws.  Defendants'

28   decision that Finisar's offers were unacceptable to them does not create a basis for a claimed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

1

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

violation of the antitrust laws.

*Second,* even if Defendants had plausibly alleged that Finisar's licensing offers were "unreasonable," Defendants have not alleged any antitrust injury. The law requires that claimants have suffered "antitrust injury"—*i.e.,* injuries resulting from diminished competition—in order to pursue claims under the antitrust laws. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). The antitrust laws are designed to protect "competition, not competitors." *Id.* Thus, the antitrust laws require as a condition precedent for liability that the challenged conduct results in an improper and substantial reduction in competition in a properly defined relevant market. *See id.*

Here, Defendants have suffered no injury—much less an "antitrust injury"—from Finisar's licensing offer, and the Court's control over the underlying patent claims ensures that they cannot suffer "antitrust injury" in the future. All of the Defendants are currently selling infringing products without paying any licensing fees to Finisar, so they clearly have not been competitively injured by Finisar's licensing offers. And the Court will be required to determine what is a "reasonable royalty" for Finisar's patented technology in the context of Finisar's infringement claim, meaning that any ongoing royalty payments (if Defendants are not enjoined completely from continuing to sell) will be based on "reasonable" rates determined by the Court. Thus, Defendants have not suffered and cannot suffer any antitrust injury, and, therefore, lack standing to pursue their monopolization, attempted monopolization, and unfair competition counterclaims.

*Third*, Defendants allege no facts that would plausibly suggest that Finisar's alleged anti-competitive conduct led to Finisar achieving monopoly power in the alleged digital diagnostics technology market, or created a "dangerous probability" that Finisar will attain monopoly power in the alleged market for optical transceivers. To the contrary, Defendants claim that they do not infringe Finisar's asserted patents while also claiming to comply with current digital diagnostics standards. As such, the only alleged monopoly power that Finisar has acquired in the purported digital diagnostics technology market is the power granted through its patent rights, not through any alleged misconduct.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

2

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1    Defendants further allege that several other competitors have taken licenses to Finisar's

2    digital diagnostic technology and continue to compete with Finisar for the sale of optical

3    transceivers.  This fact alone is fatal to Defendants' claim that Finisar attempted to monopolize

4    the alleged optical transceiver market.  Absent a "dangerous probability" that Finisar's licensing

5    activities will result in it achieving "monopoly power," there can be no antitrust violation.  *See*

6    *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).  Defendants have, at most, alleged that

7    the licensing terms offered by Finisar have the potential to affect their activities (although that too

8    does not stand up to scrutiny), but they have not alleged any facts that would suggest that overall

9    competition for the sale of optical transceivers will be adversely affected.  Defendants' failure to

10   plausibly allege that Finisar has attained "monopoly power" in the digital diagnostics technology

11   market, or will attain monopoly power in the alleged optical transceiver market, requires

12   dismissal of their monopolization and attempted monopolization claims.

13   These same considerations also require dismissal of Defendants' other non-patent

14   counterclaims, which arise from the same nucleus of operative facts and which have similar

15   standards for establishing standing and for anticompetitive harm.  Specifically, the unfair

16   competition claims fail because, as noted above, (1) Defendants have not and logically cannot

17   suffer injury from Finisar's licensing offer alone, and (2) Defendants have not alleged any

18   substantial diminution in competition from that offer.  The misuse claim likewise requires an

19   adverse effect on competition that has not been alleged, and furthermore requires that Finisar use

20   its patents to improperly expand their scope, which also has not been alleged.  Furthermore,

21   Defendants' breach of contract claims arise out of Finisar's alleged anticompetitive conduct

22   before the standard setting body and subsequent licensing practices.  Since Defendants admit

23   Finisar offered licenses in accordance with its RAND commitments, Defendants' breach of

24   contract counterclaims necessarily fail.

25   As described above and in further detail below, Defendants' non-patent Counterclaims are

26   legally deficient and should be dismissed.  In the alternative, if these Counterclaims are not

27   dismissed at this stage in the proceedings, then they should be stayed pending resolution of the

28   underlying patent claims.  Defendants' non-patent Counterclaims involve a host of issues not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                                              3                    PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

related to Finisar's infringement claims. However, discovery into these issues may ultimately be unnecessary because, as explained below, the resolution of Finisar's patent infringement claims could completely dispose of these Counterclaims. Therefore, to proceed with discovery on Defendants' non-patent Counterclaims before the patent infringement claims are determined would be wasteful of the resources of the parties and would unduly burden the Court, as well as third parties. As such, should the court decide that dismissal of Defendants' non-patent Counterclaims is not appropriate at this time, the court should sever and stay those Counterclaims pending resolution of the underlying infringement claims.

Defendants also raise several Affirmative Defenses including "statute of limitations," prosecution history estoppel, estoppel, laches, and "other defenses." Although Defendants identify a doctrine in at least four of these Affirmative Defenses, they fail to provide Finisar with the basis of any of these defenses. As such, Finisar moves to strike these Affirmative Defenses.

## II.   COUNTERCLAIM ALLEGATIONS

Finisar is a manufacturer of optoelectronic transceivers used to provide the electrical-to-optical and optical-to-electrical conversion required for modern communication over fiber optic cables. Compl. ¶¶ 23-24. Finisar has invested heavily in developing innovative new technology for improving optoelectronic transceivers, and it owns many patents relating to such technology. *Id.* at ¶¶ 24-26.

Defendants are competing manufacturers of optoelectronic transceivers. Compl. ¶¶ 32, 36. They each manufacture and sell one or more products that utilize Finisar's patented technology, *inter alia*, for digital diagnostic protocols used with optoelectronic transceivers. *Id.*

Reflecting their value, many of Finisar's patented inventions have been incorporated into voluntary commercial standards adopted by various standard-setting organizations to promote efficient technology dispersion and compatibility. *Id.* at ¶¶ 27-31. One such standard is the SFF-8472 specification, titled "Digital Diagnostic Monitoring Interface for Optical Transceivers," which was published by the Small Form Factor Committee ("SFF Committee "), a group formed to address the needs of the optical transceiver industry. *Id.* at ¶ 28. This standard defines an enhanced digital diagnostics monitoring interface for optical transceivers which allows real-time

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

4

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1   access to device operating parameters. *Id.*

2         Defendants allege that Finisar employees participated in the SFF Committee proceedings

3   that led to adoption of the SFF-8472 specification. *See* Source Photonics' First Amended

4   Counterclaims ¶¶ 28-29.[1]  Defendants further allege that "Dan Kane of Finisar wrote the

5   Committee that 'some implementations' of SFF-8472 may require Finisar intellectual property,

6   and that Finisar intended to make available 'to all interested parties a license whose scope

7   includes exclusively the monitoring and identification functions described in the proposed

8   standard.'" *Id.* at ¶ 32.  According to Defendants, Finisar provided assurances to the SFF

9   Committee that it would provide licenses for its IP-rights required to practice the SFF-8472

10  standard "under reasonable terms and conditions that are demonstrably free of discrimination."

11  *Id.*

12        "Finisar has licensed and/or offered to license other manufacturers of optical transceivers,

13  including those larger and more established than" Defendants. *Id.* at ¶ 37.  Those "larger and

14  more established" manufacturers compete with Finisar in the sale of optical transceivers.

15  Defendants also compete with Finisar in the sale of optical transceivers.  Each of the Defendants

16  manufacture and sell competing optical transceivers that infringe Finisar's patented rights to

17  digital diagnostic technology.  Compl. at ¶¶ 32, 36.

18        Each of the Defendants was offered a license to Finisar's digital diagnostic technology

19  portfolio that included both patent rights that implicate the SFF-8472 specification and additional

20  patented technology utilized in Defendants' products that does not implicate this standard. *See*

21  Compl. at ¶ 34; Source Photonics' First Amended Counterclaims ¶ 35.  Defendants refused

22  Finisar's offers of a license on RAND terms without even discussing a counter-offer, asking for a

23  license limited to only those patents and claims that implicate the SFF-8472 standard, attempting

24  to negotiate more favorable terms, or even mentioning Finisar's RAND commitment. *See id.*

25  Indeed, there is no allegation that the Defendants were ever willing—then or now—to accept a

26  license to Finisar's digital diagnostic technology on *any* terms.  The only allegation is that the

---

[1] All Defendants make these same allegations.  For the sake of convenience we cite throughout this Memorandum to just the paragraphs in Source Photonics' First Amended Answer and Counterclaims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                                5                PLAINTIFF'S MOTION TO DISMISS
                                                              CASE NO. CV 10-00032 WHA

1   Defendants refused to take a license and are not currently paying Finisar any licensing fees.

2   **III.    ARGUMENT IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

3          Finisar moves to dismiss each of Defendants' Counterclaims with the exception of their

4   Counterclaims seeking a declaratory judgment of invalidity of Finisar's asserted patents and the

5   patent infringement Counterclaims raised by Defendants Source Photonics and NeoPhotonics.

6   Finisar denies the allegations in these Counterclaims and will respond to them at the appropriate

7   time. *See, e.g., Batdorf v. Trans Union*, 2000 U.S. Dist. LEXIS 6796 (N.D. Cal. May 8, 2000)

8   ("The filing of a motion to dismiss the other causes of action enlarged the time for Trans Union to

9   respond to the entire complaint, including those causes of action it did not move to dismiss.").

10  **A.    The Applicable Standard For a Rule 12(b)(6) Motion to Dismiss.**

11         The Supreme Court's 2007 decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007),

12  effected a sea change in the standards for assessing the sufficiency of a complaint's allegations,

13  particularly in antitrust cases.  Overturning in part its fifty-year old decision in *Conley v. Gibson*,

14  355 U.S. 41, 47 (1957), the *Twombly* Court held that complaints are subject to dismissal unless

15  they plead facts—rather than conclusions—making it plausible to believe that the claimant will be

16  able to prove each element of its claims. *Twombly*, 550 U.S. at 559.  Factual allegations must

17  "possess enough heft to show that the pleader is entitled to relief." *Id.* at 545 (citations omitted).

18  A plaintiff must plead a "statement of circumstances, occurrences, and events in support of the

19  claim presented." *Id.* at 556 n.3.  Although facts as alleged are assumed to be true, this basic

20  tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

21  action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S.---,

22  129 S.Ct. 1937, 1949 (May 18, 2009); *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d

23  1399, 1403 (9th Cir. 1996).  A pleading that offers only "labels and conclusions" or "a formulaic

24  recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it

25  tenders naked assertions devoid of further factual development." *Iqbal*, 129 S.Ct. at 1949.

26  Assessing a claim's "plausibility is a context-specific task that requires the reviewing court to

27  draw on its judicial experience and common sense." *Id.* at 1950.

28         Although the *Twombly* plausibility standard applies to all claims in federal court, it is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

6

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1   particularly important in antitrust cases "because discovery in antitrust cases frequently causes

2   substantial expenditures and gives the plaintiff the opportunity to extort large settlements even

3   where he does not have much of a case." *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1047 (9th

4   Cir. 2008); *see also Twombly*, 550 U.S. at 558 (justifying the plausibility standard in part by

5   reference to the "potentially enormous" cost of discovery in antitrust cases). Thus, the Ninth

6   Circuit has made clear that in antitrust cases plaintiffs "must plead not just ultimate facts (such as

7   conspiracy), but evidentiary facts which, if true, will prove" the elements of the underlying clam.

8   *Kendall*, 518 F.3d at 1047.

9         Defendants' antitrust counterclaims are precisely the type of claims that *Twombly* was

10   designed to weed out: easy to allege in conclusory terms; extremely burdensome and expensive to

11   litigate; and inherently implausible. Defendants plead no facts suggesting that (1) Defendants

12   have or will suffer antitrust injury; (2) Finisar's licensing offers were "unreasonable"; or (3)

13   Finisar's actions created monopoly power in the alleged digital diagnostics technology market or

14   will create a "dangerous probability" of monopoly power in the alleged market for optical

15   transceivers. In fact, the actual evidentiary facts alleged in the Counterclaims suggest clearly that

16   Defendants will not be able to establish any of these essential elements of their antitrust

17   Counterclaims. As such, the Counterclaims should be dismissed.

18         **B.      Defendants Have Not Alleged Antitrust Injury, And Such Injury Is a Logical
19                   Impossibility In The Context of This Case.**

20         Each Defendant currently produces or sells competing optical transceiver products

21   utilizing Finisar's patented digital diagnostic technology, while paying no royalties to Finisar for

22   their use of any of the patent claims that Defendants allege are necessary to practice certain

23   implementations of the SFF-8472 standard. Defendants cannot, and have not, alleged that they

24   have suffered any "antitrust injuries" as a result of Finisar's licensing offers. Moreover, it is

25   logically impossible for them to suffer such injury in the context of this case.

26         Antitrust injury is a necessary element of any private antitrust claim. *See generally Atl.*

27   *Richfield Co. v. USA Petroleum Co.*, 495 U.S. 329, 339 (1990). To establish antitrust injury,

28   antitrust claimants must plead and prove five elements: "(1) unlawful conduct, (2) causing an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

7

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1   injury to plaintiffs, (3) that flows from that which makes the conduct unlawful, (4) that is of the

2   type the antitrust laws were intended to prevent" and (5) that the plaintiff "be a participant in the

3   same market as the alleged malefactors." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d

4   367, 372 (9th Cir. 2003).

5          Defendants' boilerplate, conclusory allegations of "injury" (a) need not (and should not)

6   be credited by the Court, and (b) are flatly contradicted by the actual evidentiary facts alleged in

7   the Counterclaims. *See generally Iqbal*, 129 S.Ct. at 1949 (court need not accept conclusory

8   allegations unsupported by factual allegations). Defendants offer no support for the conclusory

9   allegation that they have been injured "through the loss of past, present and future profits, by the

10  loss of customers and potential customers, by the loss of goodwill, and by the prospective

11  destruction of its optical transceiver business." Source Photonics' First Amended Counterclaims

12  at ¶ 56. In fact, Defendants have not alleged even one instance where they lost a customer or

13  profits due to Finisar's alleged conduct. To the contrary, Defendants are all selling products that

14  utilize Finisar's technology, in competition with Finisar, without paying Finisar any royalties.

15  Defendants could not have lost profits or customers due to paying Finisar "unreasonable"

16  royalties because they are not paying Finisar *any* royalties. If any party has lost profits, it is

17  Finisar.

18         Nor are there any facts alleged that would permit a reasonable inference that Defendants

19  will be injured in the future by "unreasonable royalties" for Finisar's patented digital diagnostic

20  technology. In fact, such future "injury" is a logical impossibility in the context of the underlying

21  patent case. One of three results is possible in relation to the Finisar patent claims. First,

22  Defendants may prevail in establishing either that they do not infringe Finisar's patents or that the

23  patents are invalid. In that (unlikely) event, Defendants will be able to continue their sales of

24  competing transceivers unencumbered by any royalties, *i.e.*, Defendants will have suffered no

25  antitrust injury. Second, the Court could—after finding that Defendants infringe Finisar's

26  patents—enjoin Defendants from selling infringing transceivers in competition with Finisar. In

27  that case, Defendants' exclusion from the market would result from the force of the patents and

28  the Court's order, not Finisar's royalty rates; that also would not constitute antitrust injury. Third,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

8

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1   the Court could order Defendants to pay Finisar "reasonable royalties" on an ongoing basis for

2   future sales of infringing products.  In that case, again, Defendants would not suffer "antitrust

3   injury" as their royalty rate would be set by the Court and would be "reasonable" by definition.

4         Moreover, Defendants do not allege that they would be willing to accept a license on

5   RAND terms.  Absent any allegation that they would have accepted a license on RAND terms,

6   either now or in the past, there can be no actionable antitrust harm.  If, as appears to have been the

7   case, Defendants would have rejected *any* offer from Finisar for a license to its digital diagnostics

8   technology, then the terms of Finisar's prior offers are irrelevant and Defendants cannot now

9   construe Finisar's prior offers as "unreasonable" and in violation of the antitrust laws.  If

10  Defendants were never willing to accept any offers for a license, much less an offer on RAND

11  terms, then Finisar's alleged misrepresentations to the SFF Committee cannot be causally

12  connected to any alleged antitrust harm.

13        Given Defendants' failure to allege any antitrust injury resulting from Finisar's alleged

14  conduct, their claims of monopolization and attempted monopolization must be dismissed.  *See*

15  *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 314 (N.D. Cal. 2007) (Alsup J.) (to have

16  standing to bring an antitrust action, a proponent must show whether its injury "was the type the

17  antitrust laws were intended to forestall"); *Glen Holly Entm't, Inc.*, 352 F. at 372 (same).

18  **C.**   **Defendants Have Not Alleged Facts That Would Establish Plausibly That Finisar's Licensing Offers Were "Unreasonable."**

19        Defendants' antitrust Counterclaims fail to plausibly allege that Finisar's license offer was

20  "unreasonable," and hence that it engaged in any anticompetitive conduct.  Defendants allege as

21  follows:

22

23      The royalty Finisar has demanded is the greater of 5.75% of Source Photonics' revenues (measured by invoice prices) from all sales of optical transceivers worldwide, and (as a minimum floor royalty

24  payment per unit) amounts ranging from $2.30 to $1.75 per transceiver, regardless of the price of the transceiver.  In addition,

25  Finisar has demanded a royalty-free cross-license to Finisar of all of Source Photonics' transceiver patents.  Finisar's demand exceeds

26  industry norms and practices for equivalent technology, exceeds the reasonable royalty it could have negotiated in the ex ante case

27  absent the claimed incorporation of its patents into the SFF-8472 Standard and is particularly unreasonable in light of [Defendants']

28  net margins.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

9

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

*See, e.g.*, Source Photonics' First Amended Counterclaims ¶ 36.[2]

These allegations, however, allege at most that the royalty rates offered are unreasonable for Defendants in light of their net margins, not that the royalty rates offered by Finisar (which applied to a suite of patent rights in addition to the patent claims that Defendants allege are necessary to comply the SFF-8472 specification) are objectively unreasonable or in violation of Finisar's RAND commitment. To the contrary, Defendants admit that Finisar licenses its digital diagnostics technology "to at least some optical transceiver manufacturers." *Id*. ¶ 41.[3] Further suggesting that Finisar's offers of licenses to its digital diagnostics patents were reasonable is the fact that a predecessor corporation to Defendant Source Photonics was itself a licensee to some of these same patents. Although this licensee had been paying royalties to Finisar, the licensee subsequently stopped royalty payments when it merged with another company to later become Source Photonics.

In addition, Defendants' allegations that they personally found Finisar's offer of a license to be "unreasonable" in light of their net margins is irrelevant to whether the offer was objectively unreasonable or whether Finisar has violated the antitrust laws. Finisar's offer need not be calibrated to each Defendants' net margins. Defendants could be operating in unreasonably inefficient manners and Finisar is certainly not required to price its licenses in a way to prop-up inefficient competitors. *See generally Arthur S. Langenderfer, Inc., v. S.E. Johnson Co.*, 917 F.2d 1413, 1431 (6th Cir. 1990) ("Lively legal competition will result in the efficient and shrewd businessman routing the inefficient and imprudent from the field. The antitrust laws must be administered in such a way that they do not restrain such vigorous competition in order to protect inefficient competitors.") (internal citations omitted). Under Defendants' interpretation of the antitrust laws, potential licensees would have an incentive to operate inefficiently so that they

---

[2] Defendants fail to mention an important detail about Finisar's offers for a license-- these offers were for a license to much more than just patent claims that implicate the SFF-8472 specification. The offered licenses also included patents that do not implicate this standard. Defendants, however, never asked for a more limited license to just those claims implicated by the standard.

[3] Notably, one licensee entered into a license to Finisar's digital diagnostics patent portfolio with royalty rates *higher* than the rates Defendants allege were offered to them.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

10

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

could force patentees with RAND obligations to give them a license on unreasonable terms in order to avoid liability under the antitrust laws.  To the contrary, antitrust laws are intended to protect competition, not to encourage inefficient business practices.  Accordingly, there is no alleged basis for Defendants' claim that Finisar's offer of a license was unreasonable or in violation of the antitrust laws.[4]

### D.   Defendants Have Not Alleged Facts Making It Plausible To Believe That Finisar Has Now, Or Has A Dangerous Probability of Achieving, Monopoly Power In The Alleged Relevant Markets.

Defendants raise two antitrust Counterclaims: (1) that Finisar unlawfully obtained a monopoly in the alleged digital diagnostics technology market and (2) that Finisar is attempting to monopolize the alleged optical transceiver market.  *See, e.g.,* Source Photonics' First Amended Counterclaims at ¶¶ 24, 41-49, 56, 61-62.  However, Defendants' allegations of existing monopoly power in the alleged digital diagnostics technology market and a dangerous probability of achieving market power in the alleged optical transceiver market are unsupported by—and in fact contradicted by—the factual allegations in the Counterclaims.

### 1.   Defendants' Monopolization Counterclaims Fail As A Matter of Law.

Defendants claim that Finisar has monopolized the digital diagnostics technology market.  *See, e.g.,* Source Photonics' First Amended Answer at ¶¶ 41-45, 56.  However, Defendants also claim that they do not infringe Finisar's asserted patents despite selling products that they advertise as being compliant with the SFF-8472 specification.  *See, e.g.,* Source Photonics' First Amended Answer at ¶¶ 37-82.  If, as Defendants allege, they manufacture products in compliance with the SFF-8472 specification without infringing Finisar's patents, then Finisar cannot be monopolizing the alleged digital diagnostics technology market.  To the contrary, the only monopoly power Finisar would have acquired would be through the force of its patents, not through any alleged misconduct before the SFF Committee.

---

[4] Defendants also allege that Finisar failed to offer licenses "demonstrably free of any unfair discrimination" because Finisar "licensed and/or offered to license other manufacturers of optical transceivers, including those larger and more established than [Defendants], on far more favorable terms."  *See, e.g.,* Source Photonics' First Amended Counterclaims ¶ 37.  These allegations, however, fail to recognize that royalty rates understandably differ depending on the nature and scope of patents covered by related intellectual property cross-licenses, a common practice in the optoelectronic transceiver industry.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

11

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1    Moreover, even if compliance with the SFF-8472 specification necessarily requires the

2    use of Finisar's digital diagnostics technology, absent an allegation that the SFF Committee

3    would have adopted a standard that did not implicate *any* company's intellectual property rights,

4    the alleged conduct did not have an anticompetitive effect.  *See, e.g., Brunswick Corp. v. Reigel*

5    *Textile Corp.*, 752 F.2d 261, 265 (7th Cir. 1984) (shifting "a lawful monopoly into different hands

6    … has no antitrust significance").   Defendants simply allege that if Finisar misled the SFF

7    Committee and the SFF Committee had been aware of the deception, then the SFF Committee

8    would have adopted a different standard that *could* have been outside of any company's

9    intellectual property rights.  *See, e.g.,* Source Photonics' First Amended Counterclaims at ¶ 51.

10   However, Defendants do not allege that the SFF Committee *would* have adopted a standard that

11   was not implicated by any intellectual property rights, only that it *could* have.  Thus, the effect of

12   Finisar's alleged deception of the SFF Committee was simply to bestow on Finisar market power

13   in the purported technology market that Defendants allege that may have been bestowed on a

14   different patent owner.  This result would have no effect on overall competition.  *See, e.g.,*

15   *Brunswick Corp*, 752 F.2d at 265; *see also Rambus v. FTC,* 522 F.3d 456, 464 (D.C. Cir. 2008)

16   ("Deceptive conduct—like any other kind—must have an anticompetitive effect in order to form

17   the basis of a monopolization claim.").  Accordingly, Defendants fail to allege facts making it

18   plausible to believe that Finisar has a monopoly in the digital diagnostics technology market.

19           **2.    Defendants' Attempted Monopolization Counterclaims Also Fail As A
                      Matter of Law.**

20           Defendants claim that Finisar engaged in "attempted monopolization" of an alleged

21   market for optical transceivers in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  *See,*

22   *e.g.,* Source Photonics' First Amended Counterclaims at ¶¶ 60-64.  To succeed on their attempted

23   monopolization claim, Defendants must allege and ultimately prove the following four elements:

24           1.    that Finisar had a "specific intent" to monopolize the alleged optical transceiver

25   market;

26           2.    that Finisar engaged in anti-competitive or exclusionary conduct;

27           3.    that such anti-competitive or exclusionary conduct creates a "dangerous

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                                12                PLAINTIFF'S MOTION TO DISMISS
                                                               CASE NO. CV 10-00032 WHA

probability" that Finisar will achieve "monopoly power" in the alleged optical transceiver market; and

        4.     that Defendants have suffered antitrust injury.

*Spectrum Sports*, 506 U.S. at 456.

       Here, Defendants have not alleged any facts that would make it plausible to believe Finisar has a "dangerous probability" of achieving "monopoly power" in the alleged optical transceiver market. To the contrary, the allegations in Defendants' counterclaims suggest strongly that Finisar faces and will continue to face vigorous competition in the alleged optical transceiver market. Defendants explicitly allege that Finisar licenses its digital diagnostics technology "to at least some optical transceiver manufacturers, including those larger and more established than" Defendants. *See, e.g.,* Source Photonics' First Amended Counterclaims ¶¶ 37, 41. These "larger and more established" manufacturers currently compete with Finisar in the sale of optical transceivers (as do Defendants), and Defendants' allegations suggest that they will continue to offer substantial competition to Finisar in the future.[5]

       Thus, there are no "evidentiary facts" alleged to support conclusory allegations in the Counterclaims that "there is a dangerous probability that, unless restrained, Finisar's course of conduct will succeed" in producing monopoly power for Finisar. *Id.* at ¶ 62; *see generally, Kendall*, 518 F.3d at 1047 (requiring pleading of evidentiary facts to support essential elements of claims). Defendants have alleged no reason to believe that Finisar's licensing offer will injure Defendants or prevent them from competing with Finisar in the sale of optical transceivers. Even if it did, however, the antitrust laws are designed to "protect competition, not competitors," and Defendants' allegations of substantial competition from other optical transceiver manufacturers negates as a plausible possibility that Finisar will attain monopoly power in the alleged "optical transceiver" market. *See generally, Brown Shoe*, 370 U.S. at 320.[6]

---

[5] Thus, it is not surprising that Defendants allege no facts—such as market share—that would provide indirect evidence of monopoly power.

[6] Defendants' failure to allege any "evidentiary facts" suggesting plausibly that Finisar's licensing practices would result in monopoly power in downstream markets for products containing the patented technology at issue distinguishes this case from *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1          13         PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

**E.**     **Defendants' Allegations that Finisar Has Engaged in Unfair Competition in violation of California Business and Professions Code § 17200 et seq. Fail as a Matter of Law.**

Defendants also raise Counterclaims alleging that Finisar has engaged in unfair competition in violation of California Business and Professions Code § 17200, *et seq.* California's unfair competition law permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Although the unfair competition law is broadly written to permit courts to restrain dishonest or unfair business dealings, the scope of the law is not unlimited. 'Courts may not simply impose their own notions of the day as to what is fair or unfair.'" *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 938 (2003) (*quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

Under this statute, "there are three different varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837, 51 Cal. Rptr. 3d 118 (2006); *see also Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 8 Cal. Rptr. 3d 350 (2003) (proponent "must establish that the practice is either unlawful (*i.e.*, is forbidden by law), unfair (*i.e.*, harm to victim outweighs any benefit) or fraudulent (*i.e.*, is likely to deceive members of the public)."). For claims based on the "fraudulent" prong of the statute, courts have held that the proponent must allege that it justifiably relied on the purported misrepresentations. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005). For claims based on the "unfair" or "unlawful" prong of the statute, courts have held that the proponent need not allege reliance on misrepresentations, but must allege "causation more generally." *See In re Ditropan XL Antitrust Litigation*, 529 F. Supp.

---

2007). In *Broadcom*, the Third Circuit allowed antitrust claims to proceed past a motion to dismiss based on a theory that discriminatory licensing fees in contravention of assurances made to a standard setting organization allowed the defendant to create monopoly power in a downstream market for chipsets. *Id.* at 318. In that case, "Qualcomm was discriminating among licensees of the essential WCDMA technology by charging more and higher fees to those who do not use Qualcomm's UMTS chipsets." *Id.* Plaintiff in that case alleged specific facts establishing that (a) many of the key customers for chipsets had been induced to purchase chipsets from Qualcomm due to the discriminatory licensing terms and (b) that Qualcomm had dominated an earlier generation chipset market through essentially the same practices. *Id.* at 319-20. No similar facts are alleged here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

14

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1    2d 1098, 1105 (N.D. Cal. 2007).

2           Here, Defendants' unfair competition Counterclaims arise out of Finisar's alleged

3    anticompetitive conduct before the SFF Committee and subsequent licensing offers.  Defendants

4    allege that Finisar induced the SFF Committee to adopt a standard that requires Finisar's digital

5    diagnostics technology in reliance on assurances that it would license on RAND terms and

6    subsequently repudiated that commitment.  Further, Defendants allege that Finisar "has

7    monopolized or, in the alternative, is attempting with specific intent to monopolize" the relevant

8    market, and "failed to license those patents on RAND terms" which constitutes "fraudulent

9    business acts or practices."  *See* Source Photonics' First Amended Counterclaims ¶¶ 75-83.

10   Given that these claims arise out of Finisar's alleged anticompetitive conduct before the SFF

11   Committee and subsequent licensing practice, a finding that Defendants have not properly alleged

12   that Finisar engaged in anticompetitive conduct defeats any claim by the Defendants that Finisar's

13   conduct was "unlawful" or "fraudulent."  *See, e.g. Hynix Semiconductor, Inc. v. Rambus, Inc.*,

14   609 F. Supp. 2d 988, 1023 (N.D. Cal. 2009) (unfair competition claims that arise out of alleged

15   anticompetitive conduct are defeated by finding that the alleged anticompetitive conduct did not

16   occur).

17          Defendants also assert that Finisar's conduct was "unfair" and violated § 17200.  The

18   California Supreme Court has set the standard for establishing a violation of § 17200 by an

19   "unfair" act or practice.  The word "unfair" in that section means conduct that threatens an

20   incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

21   its effects are comparable to or the same as a violation of the law, or otherwise significantly

22   threatens or harms competition.  *Cel-Tech.*, 20 Cal. 4th at 187.  Here, since Defendants have not

23   sufficiently alleged Finisar to have engaged in anticompetitive conduct, Finisar's alleged conduct

24   cannot be considered "unfair."  *See Hynix*, 609 F. Supp. 2d at 1024-25.  In sum, given that

25   Defendants base their unfair competition Counterclaims on the same allegations as their antitrust

26   claims and since those claims are deficient, the unfair competition Counterclaims necessarily fail.

27          In addition, Defendants fail to allege facts that would establish their standing to pursue

28   their unfair competition claims.  Standing under California unfair competition law is limited to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                           15                 PLAINTIFF'S MOTION TO DISMISS
                                                            CASE NO. CV 10-00032 WHA

those who lost money or property in which they had prior possession or a vested legal interest. *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009).  As explained above, Defendants have suffered no loss as a result of Finisar's alleged licensing offers and cannot suffer such losses given the underlying infringement lawsuit.  Accordingly, Defendants' Counterclaims alleging that Finisar has engaged in unfair competition in violation of California Business and Professions Code § 17200, *et seq.* should be dismissed.

### F.    Defendants' Allegations that Finisar Has Engaged in Patent Misuse Fail as a Matter of Law.

Each Defendant seeks a declaratory judgment that the '769 patent, the '775 patent, the '021 patent, the '310 patent, the '531 patent, the '160 patent, the '668 patent, and the '720 patent ("Finisar's Digital Diagnostics Patents") are unenforceable as a result of patent misuse.  However, these Counterclaims do not allege any misuse of Finisar's Digital Diagnostics Patents.  Specifically, Defendants allege that "Finisar has committed patent misuse through its licensing behavior, and it[s] activities in connection with the SFF Committee and the establishment of the SFF- 8472 Specification.  Finisar has used its patents, and their adoption by the SFF Committee under false pretenses, to gain monopoly power in the technology and product markets its patents alone would not have afforded."  *See, e.g.*, Source Photonics' First Amended Counterclaims ¶ 66.  This alleged conduct does not constitute patent misuse.

As a preliminary matter, Defendants' patent misuse claim must also be dismissed because patent misuse is not an independent cause of action, but rather an affirmative defense to a charge of infringement.  *See, e.g., U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005) ("Patent misuse is an equitable defense to patent infringement"); *Windsurfing Intern. Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) ("patent misuse is an affirmative defense to a suit for patent infringement"); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997) ("the defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim"); *Enercon GMBH v. Erdman*, 13 Fed. Appx. 651, 652 (9th Cir. 2001) ("patent misuse is an affirmative defense to a suit for patent infringement, not an independent cause of action").  The Court should dismiss

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

16

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

these Counterclaims without leave to amend because Defendants' patent misuse allegations are also not viable as affirmative defenses.

Patent misuse "arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *Id.* The Federal Circuit has cautioned that the defense not be read broadly to capture any generally-alleged "wrongful" use of patents. *Id.* at 1373 ("Although the defense of patent misuse . . . evolved to protect against 'wrongful' use of patents, the catalog of practices labeled 'patent misuse' does not include a general notion of 'wrongful' use."). Rather, the defense is generally directed towards conduct that "affect[s] competition in unpatented goods or that otherwise extend[s] the economic effect beyond the scope of the patent grant." *Id.*

Here, Defendants do not allege that Finisar has attempted to impermissibly broaden its patent rights. Finisar's alleged conduct pertains to its representations to the SFF Committee and its licensing activities. There is no allegation that Finisar has attempted to tie a license to an unpatented article, to affect competition in unpatented goods, or to somehow exceed the legitimate monopoly power granted by the digital diagnostics patent portfolio. In particular, Defendants' allegations that Finisar somehow misled the SFF Committee does not suggest that Finisar attempted to expand the legitimate scope of its intellectual property rights granted by its Digital Diagnostics Patents. Although Defendants allege "wrongful" conduct in the form of alleged misrepresentations to the SFF Committee during the standardization process, this alleged conduct is not patent misuse. *See C.R. Bard, Inc.*, 157 F.3d at 1372 (the patent misuse defense may not be read broadly to capture any generally-alleged "wrongful" use of patents). Accordingly, Defendants' allegations do not raise a viable claim for patent misuse.

In addition, since Defendants base their patent misuse Counterclaims on the same allegations as their antitrust claims and since those claims are deficient, the misuse claim also necessarily fails. *See, e.g., Hynix*, 609 F. Supp. 2d at 1030 ("Since [certain Plaintiffs] base their

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                    17            PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1  patent misuse defense on the same allegations as their antitrust and unfair competition claims and

2  since those claims were not proved, the defense necessarily fails."). As such, Defendants'

3  Counterclaims for a declaratory judgment that Finisar's Digital Diagnostics Patents are

4  unenforceable as a result of patent misuse should be dismissed for failing to state a claim upon

5  which relief can be granted.

6        **G.      Defendants' Breach of Contract Counterclaims Fail as a Matter of Law.**

7        Defendants allege that Finisar entered into actual or implied contractual commitments

8  with the SFF Committee relating to the adoption of the SFF-8472 Standard and that they were

9  intended beneficiaries of those contracts. *See, e.g.*, Source Photonics' First Amended

10  Counterclaims ¶¶ 70-71. Defendants further allege that Finisar breached its contractual

11  commitment to the SFF Committee to offer RAND licenses "by failing to offer to license patents

12  it now contends are essential in accordance with its RAND commitments." *Id.* at ¶ 72.

13        As described above, Finisar offered each Defendant a license to its digital diagnostics

14  technology under RAND terms, and each Defendant rejected these offers without even offering to

15  negotiate for more favorable terms. Indeed, Defendants admit in their pleadings that Finisar

16  offered licenses to its digital diagnostics technology and that other competitors accepted those

17  licenses. *See, e.g.*, Source Photonics' First Amended Counterclaims ¶¶ 36-37. As such, even

18  assuming Defendants' allegations to be true, Finisar has met its purported obligations under its

19  alleged contractual commitment to the SFF Committee, and Defendants' breach of contract

20  Counterclaims fail to state a claim upon which relief can be granted.

21  **IV.     IN THE ALTERNATIVE, DEFENDANTS' NON-PATENT COUNTERCLAIMS**
22  **SHOULD BE SEVERED AND STAYED PENDING RESOLUTION OF FINISAR'S**
    **PATENT CLAIMS.**

23        Courts managing cases with both patent and antitrust issues, as here, have described

24  bifurcation of these claims as "standard practice." *See In re Innotron Diagnostics*, 800 F.2d 1077,

25  1084 (Fed. Cir. 1986) (describing the "now-standard practice of separating for trial patent issues

26  and those raised in an antitrust counterclaim."). Rule 42(b) of the Federal Rules of Civil

27  Procedure authorizes district courts to bifurcate claims "in furtherance of convenience or to avoid

28  prejudice, or when separate trials will be conducive to expedition or economy." Fed. R. Civ. P.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

42(b).  Rule 42(b) also provides courts with the power to stay discovery in order to facilitate the

bifurcation process.  *See Ellingston Timber Company v. Great Northern Rwy. Co.*, 424 F.2d 497,

499 (9th Cir.) ("It is implicit that the court also had power to limit discovery to the segregated

issues."), *cert. denied* 400 U.S. 957 (1970).  "One of the purposes of Rule 42(b) is to permit

deferral of costly and possibly unnecessary discovery proceedings pending resolution of

potentially dispositive preliminary issues." *Id.*; *see also* Manual for Complex Litigation 3d §

33.62, at 361 (Fed. Judicial Center 1995) ("Bifurcation for trial under Rule 42(b) may be

advisable to avoid unnecessary time and expense of discovery and trial . . .").

In patent cases, a separate trial and stay of discovery on antitrust and state law

counterclaims is generally appropriate given the complexity of the cases, the time and expense

required for discovery and trial of such claims, and the fact that the outcome of the underlying

patent dispute may effectively dispose of such claims altogether.  "Bifurcation is particularly

appropriate when resolution of a single claim or issue could be dispositive of the entire case," as

is true here. *General Patent Corp. v. Hayes Microcomputer*, No. 97-429, 1997 WL 1051899, at

*1 (C.D. Cal. Oct. 20, 1997) (citation omitted); *see also ASM America, Inc. v. Genus, Inc.*, No.

01-2190 EDL, 2002 WL 24444, 2002 U.S. Dist. LEXIS 1351 *20-21 (N.D. Cal. Jan. 9, 2002)

(concluding "that a stay of the antitrust claims will promote judicial economy significantly" when

"[r]esolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether"

and given the "wide swath of non-overlapping discovery on the antitrust claims that will be

required").

Discovery and trial on the issues raised by Defendants' non-patent counterclaims will be

time consuming and expensive. *See Innotron*, 800 F.2d at 1085 n.14 ("It is undisputed that the

antitrust claims raise more complex issues and that discovery on those issues will be far more

complex and wide-ranging than will discovery pertaining to the patent issues . . . "); *Pharmacia,

AB v. Hybritech, Inc.*, 224 U.S.P.Q. (BNA) 975 (S.D. Cal. 1984) (staying antitrust claims

achieved an "advantageous result" because of "the extensive and protracted discovery inherent in

trial of the antitrust issues").  For instance, discovery will be necessary regarding (1) the scope of

the "relevant markets" for assessing competitive effects in relation to Defendants' monopolization

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

19

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1 and attempted monopolization claims, (2) the nature of competition in those markets; (3) the

2 nature and specific effects of Finisar's licensing offer to Defendants; and (4) the facts surrounding

3 the adoption of the SFF-8472 standard.  That discovery is likely to be substantial in scope and to

4 require substantial time and effort to complete.

5        All of that discovery will, however, likely be rendered moot and unnecessary by

6 resolution of the underlying Finisar patent claims.  If Defendants are found not to infringe

7 Finisar's patents, then Plaintiffs cannot have been affected by Finisar's representations to the SFF

8 Committee, rendering their antitrust, unfair competition, contract and misuse counterclaims a

9 nullity.  If, by contrast, Finisar prevails in establishing that Defendants infringed its patents, the

10 Court will be asked to decide a "reasonable royalty rate" for Finisar's digital diagnostic patents,

11 which could also render Defendants' non-patent counter-claims moot for the reasons explained

12 above in relation to Defendants' lack of antitrust injury.  Curiously, Defendants do not even

13 allege that compliance with the SFF-8472 specification necessarily requires infringement of

14 Finisar's asserted patents.  If Defendants can comply with the SFF-8472 specification without

15 infringing Finisar's patent rights, then Finisar would have no RAND obligations.  It makes little

16 sense to waste the Court's and the parties' resources exploring Finisar's representations to the

17 SFF Committee and Finisar's licensing practices if Finisar never actually had an obligation to

18 offer licenses on RAND terms.

19        As demonstrated above, the allegations in the non-patent Counterclaims themselves make

20 clear that those Counterclaims are legally deficient and should be dismissed.  If they are not

21 dismissed, however, they should be stayed pending resolution of the underlying patent claims.

22 **V.     ARGUMENT IN SUPPORT OF MOTION TO STRIKE CERTAIN
         AFFIRMATIVE DEFENSES**

23

24        Finisar also moves to strike certain Affirmative Defenses raised by Defendants.

25        **A.     The Applicable Standard For a Rule 12(f) Motion to Strike.**

26        Motions to strike are governed by Fed. R. Civ. P. 12(f), which authorizes a court to strike

27 "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

28 scandalous matter."  *Id.*  Motions to strike are designed to "avoid the expenditure of time and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                                20                    PLAINTIFF'S MOTION TO DISMISS
                                                                   CASE NO. CV 10-00032 WHA

money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  A district court properly grants a "motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." *Fogerty*, 984 F.2d at 1528.

An affirmative defense is insufficient if it fails to meet the Rule 8 pleading standards. *Qarbon v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004).  Like complaints, affirmative defenses must give "fair notice" of the defense being advanced.  *Id*.  And a "reference to a doctrine, like a reference to statutory provisions, is insufficient notice."  *Id*.   These types of bare-bones asserted defenses certainly fail to meet the heightened pleading standards articulated in recent cases such a *Twombly* and *Iqbal*.  Notably, the increased time and expense of trial may constitute sufficient prejudice to warrant granting a Rule 12(f) motion.  *See Fantasy, Inc.*, 984 F.2d at 1527.

### B.    Certain Affirmative Defenses Raised by Defendants Are Legally Insufficient.

Defendants raise several Affirmative Defenses including a "statute of limitations" affirmative defense, s*ee* First Amended Answers ¶ 107, a prosecution history estoppel affirmative defense, *id*. at ¶ 108, a laches affirmative defense, *id*. at ¶ 109, an estoppel affirmative defense, *id*. at ¶ 110, and an "other defenses" defense.  *Id*. ¶ 111.  These Affirmative Defenses are insufficiently pleaded for failing to provide Finisar with the basis of the claims.  If the defenses are not stricken, prejudice to Finisar will result in that it will be required to propound extensive discovery to ascertain the basis for the defenses and engage in the expenditure of time and money which must arise from litigating spurious issues.  *See Fantasy, Inc.*, 984 F.2d at 1527.

#### 1.    Defendants Insufficiently Plead a Statute of Limitations Affirmative Defense.

Defendants assert  that "Recovery on Finisar's claims is barred, in whole or in part, by the applicable statute of limitations, 35 U.S.C. § 286."  First Amended Answers ¶ 107.  Patent cases, however, have no "statute of limitations."  *See, e.g., Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed. Cir. 1984) ("there is no statute from which to determine the timeliness of an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

21

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

1  infringement action").  While the patent law limits recovery to infringing sales within the

2  preceding six-year period, it does not bar patent holders from bringing suit and recovering

3  damages for ongoing infringement or for infringement within the six years preceding the filing of

4  suit.  35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any

5  infringement committed more than six years prior to the filing of the complaint or counterclaim

6  for infringement in the action.").  Finisar's Complaint alleges that Defendants' infringement is

7  ongoing.  At most, Section 286 may limit Finisar's recoverable damages, but it does not bar

8  Finisar's claims "in whole or in part."  As such, Defendants' Affirmative Defense of "statute of

9  limitations" is legally insufficient and must be stricken.

10        **2.    Defendants Insufficiently Plead Prosecution History Estoppel and Estoppel Affirmative Defenses.**

11
12        Defendants' plead the doctrines of estoppel and prosecution history estoppel as

Affirmative Defenses.  *See* First Amended Answers ¶ 108 ("Finisar's claims are barred under the

13 doctrine of prosecution history estoppel to the extent that Finisar alleges infringement under the

14 doctrine of equivalents."), ¶ 110 ("By reasons of Finisar's own conduct, statements, acts, and

15 omissions, Finisar is estopped from any equitable relief").

16        Each of these Affirmative Defenses points to a doctrine, but none provide Finisar with the

17 required fair notice or the grounds for the defenses.  To sufficiently plead estoppel, a claimant

18 must allege the following elements: (1) misleading conduct leading to inference that the patentee

19 does not intend to enforce the patent against the alleged infringer; (2) reliance by the alleged

20 infringer and the patentee's conduct; and (3) material prejudice if the patentee is allowed to

21 proceed with an infringement suit.  *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d

22 1062, 1063 (Fed. Cir. 1995).  By contrast, Defendants allege no facts to satisfy these elements and

23 their bare bones and conclusory references to a doctrine are insufficient notice to satisfy the

24 affirmative defense pleading standard.  *See Qarbon*, 315 F. Supp. 2d at 1049.

25        Defendants' estoppel and prosecution history estoppel Affirmative Defenses do not even

26 set forth the elements of these doctrines, providing a second basis to strike them.  *See id.*  For

27 these reasons, these estoppel Affirmative Defenses do not meet the pleading standard of Rule 8

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

22

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA

and must be stricken.  *See id.; cf. Sun Microsystems, Inc. v. Datram Corp.*, No. CIV. 96-20708 SW, 1997 WL 50272, at *4 (N.D. Cal. 1997) (finding that defendant has provided plaintiff with "fair notice" by sufficiently setting forth the elements of the estoppel defense).

### 3.     Defendants Insufficiently Plead a Laches Affirmative Defense.

Defendants' Affirmative Defense of laches is similarly vague and does not explain how the doctrine applies, nor do they provide any facts so that Finisar can determine how the doctrine applies.  To properly plead a laches claim or defense, the proponent must allege facts that show: (1) the patentee delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its infringement claims; and (2) the delay resulted in material prejudice or injury to the proponent.  *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).  A presumption of laches arises "upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity."  *Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1294 (Fed. Cir. 2008).

Here, Defendants simply allege that "By reasons of Finisar's own conduct, statements, acts, and omissions, Finisar is barred from any equitable relief by the doctrine of laches."  *See* First Amended Answers ¶ 109.  Defendants, however, do not allege either of the elements to establish a laches defense.  Nor do they allege any specific conduct, statements, acts, or omissions sufficient to give Finisar fair notice of the basis of this defense.  As such, Defendants' laches Affirmative Defense must be stricken.

### 4.     "Other Defenses" Is Not a Legally Recognized Affirmative Defense.

Defendants assert an Affirmative Defense identified only as "Other Defenses."  *See* First Amended Answers ¶ 111 ("other defenses that may be available by law, or pursuant to statute, of which [Defendant] becomes aware as a result of discovery or otherwise during the course of this matter").  This is not an affirmative defense, but rather a placeholder for potential future affirmative defenses.  Given that this Affirmative Defense does not contain an allegation or a legally recognized defense, this defense must be stricken.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1                                        23                   PLAINTIFF'S MOTION TO DISMISS
                                                                          CASE NO. CV 10-00032 WHA

VI.     **CONCLUSION**

For all of the foregoing reasons, Finisar respectfully requests that the Court dismiss Defendants' Counterclaims of monopolization, attempted monopolization, patent misuse, unfair competition, and breach of contract.  Further and in the alternative, Finisar respectfully requests that the Court bifurcate and stay discovery and proceedings on any Counterclaims that are not dismissed pending resolution of Finisar's patent infringement claims.  Finally, Finisar respectfully requests that the Court strike the improperly pleaded Affirmative Defenses of "statute of limitations," prosecution history estoppel, estoppel, laches, and "other defenses."

Dated: April 13, 2010                           MORGAN, LEWIS & BOCKIUS LLP


By   /s/Michael J. Lyons
     Michael J. Lyons
     Attorneys for Plaintiff
     FINISAR CORPORATION

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21669178.1

24

PLAINTIFF'S MOTION TO DISMISS
CASE NO. CV 10-00032 WHA