ROBERT T. HASLAM (Bar No. 71134)
rhaslam@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone:      (650) 632-4700
Facsimile:      (650) 632-4800

ALAN H. BLANKENHEIMER (Bar No. 218713)
ablankenheimer@cov.com
LAURA E. MUSCHAMP (Bar No. 228717)
lmuschamp@cov.com
JO DALE CAROTHERS (Bar No. 228703)
jcarothers@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, CA  92122-1225
Telephone:      (858) 678-1800
Facsimile:      (858) 678-1600

Attorneys for Defendants and Counterclaimants
SOURCE PHOTONICS, INC., MRV COMMUNICATIONS, INC.,
NEOPHOTONICS CORPORATION, and OPLINK COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware Corporation,<br><br>        Plaintiff and Counterdefendant,<br><br>        v.<br><br>SOURCE PHOTONICS, INC., a Delaware Corporation, MRV COMMUNICATIONS, INC., a Delaware Corporation, NEOPHOTONICS CORPORATION, a Delaware Corporation, and OPLINK COMMUNICATIONS, INC., a Delaware Corporation,<br><br>        Defendants and Counterclaimants. | Civil Case No.:  CV 10-00032 WHA<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR, IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN COUNTERCLAIMS, AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**<br><br>DATE:  May 20, 2010<br>TIME:  8:00 a.m.<br>COURTROOM: 9, 19th Floor<br>JUDGE:  Hon. William Alsup |

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR, IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN COUNTERCLAIMS, AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSE

CV 10-00032-WHA

# TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUES ................................................................. 1

II.   INTRODUCTION .................................................................................... 1

III.  FACTS PLEADED IN DEFENDANTS' COUNTERCLAIMS ....................... 2

IV.   ARGUMENT ........................................................................................... 5

  A.  Finisar's Motion to Dismiss Should Be Denied ................................. 5

      1.  The Applicable Standard For a Rule 12(b)(6) Motion to
          Dismiss ................................................................................. 5

      2.  Counterclaimants Have Pleaded Facts Establishing Their
          Antitrust Standing ................................................................. 5

          a)  Counterclaimants Have Pleaded Facts Alleging Unlawful
              Conduct ........................................................................ 6

          b)  Counterclaimants Have Pleaded Facts Alleging Finisar's
              Unlawful Conduct Caused Injury to Counterclaimants ............... 7

          c)  Counterclaimants Have Pleaded Facts Alleging that Their
              Injury Is of the Type the Antitrust Laws Were Intended to
              Prevent ........................................................................ 8

      3.  Counterclaimants Have Pleaded Facts Supporting Their
          Monopolization Counterclaims .............................................. 10

      4.  Counterclaimants Have Pleaded Facts Supporting Their
          Attempted Monopolization Counterclaims.............................. 12

      5.  Counterclaimants Have Pleaded Facts Supporting Their Unfair
          Competition Counterclaims .................................................. 14

      6.  Counterclaimants Have Pleaded Facts Supporting Their Patent
          Misuse Counterclaims .......................................................... 15

      7.  Counterclaimants Have Pleaded Facts Supporting Their Breach
          of Contract Counterclaims ................................................... 17

  B.  Finisar's Alternative Request for the Severance and Stay of the
      Counterclaims Should Be Denied........................................................ 17

  C.  Finisar's Motion to Strike Defendants' Affirmative Defenses Should
      Be Denied ....................................................................................... 20

      1.  The Applicable Legal Standard ............................................. 20

      2.  Defendants' Affirmative Defenses are Sufficiently Pled ........ 21

          a)  35 U.S.C. § 286................................................................. 21

b)      Prosecution History Estoppel ........................................................ 21

c)      Estoppel ..................................................................................... 22

d)      Laches ....................................................................................... 23

e)      Other Defenses............................................................................ 24

3.      If the Court Finds Any of Defendants' Affirmative Defenses
are Insufficiently Pled, Defendants Should be Granted Leave to
Amend.................................................................................................. 24

V.      CONCLUSION............................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

CASES

3

4    *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
          52 F.3d 1062 (Fed. Cir. 1995) ..........................................................................22

5    *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
6         190 F.3d 1051 (9th Cir. 1999) .............................................................................6

7    *Ashcroft v. Iqbal*,
          129 S.Ct. 1937 (2009).........................................................................................5

8    *Atl. Richfield Co. v. USA Petroleum Co.*,
9         495 U.S. 328 (1990)............................................................................................8

10   *Bell Atlantic Corp. v. Twombly*,
          550 U.S. 544 (2007).............................................................................................5
11
     *Brader v. Allegheny Gen. Hosp.*,
12        64 F.3d 869 (3d Cir. 1995) .................................................................................13

13   *Broadcom Corp. v. Qualcomm Inc.*,
14        501 F.3d 297 (3d Cir. 2007) .........................................................................passim

15   *Brown Shoe Co. v. United States*,
          370 U.S. 294 (1962)............................................................................................8
16
     *C.R. Bard, Inc. v. M3 Systems, Inc.*,
17        157 F.3d 1340 (Fed. Cir. 1998) .........................................................................16

18   *Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co.*,
19        20 Cal. 4th 163 (1999)........................................................................................14

20   *Climax Molybdenum Co. v. Molychem LLC*,
          414 F. Supp. 2d 1007 (D. Colo. 2005)............................................................17, 19
21
     *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*,
22        567 F.3d 1084 (9th Cir. 2009) ............................................................................12

23   *Cont'l D.I.A. Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*,
24        No. 08-02136, U.S. Dist. LEXIS 65908 (N.D. Cal. Aug. 26, 2008) .................19, 22

25   *Coto Settlement v. Eisenberg*,
          593 F.3d 1031 (9th Cir. 2010) .............................................................................5
26
     *Danjaq LLC v. Sony Corp.*,
27        263 F.3d 942 (9th Cir. 2001) .............................................................................17

28

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)..................................................................................................18

*Equal Employment Opportunity Comm'n v. Interstate Hotels, L.L.C.*,
   No. 04-04092, 2005 U.S. Dist. LEXIS 45000 (N.D. Cal. Apr. 14, 2005)..............................20

*Ganley v. County of San Mateo*,
   No. 06-3923, 2007 U.S. Dist. LEXIS 26467 (N.D. Cal. Mar. 22, 2007) ...................20, 21, 22

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*,
   60 F.3d 770 (Fed. Cir. 1995) ...........................................................................23

*Gen. Tel. & Elecs. Labs. Inc. v. Nat'l Video Corp.*,
   297 F. Supp. 981 (N.D. Ill. 1968)..................................................................18

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) .............................................................18, 19

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003) .......................................................................6, 7

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ........................................................................17

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 988 (N.D. Cal. 2009)...........................................................16

*In re Theodor Groz & Sohne*,
   1992 WL 188908 (Fed. Cir. May 18, 1992) ................................................18

*Katz v. Household Int'l, Inc.*,
   91 F.3d 1036 (7th Cir. 1996) ........................................................................14

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ......................................................................24

*McArdle v. AT&T Mobility LLC*,
   657 F. Supp. 2d 1140 (N.D. Cal. 2009)..........................................................20

*McKell v. Washington Mutual, Inc.*,
   142 Cal. App. 4th 1457 (2006) ......................................................................17

*MetroNet Servs. Corp. v. Qwest Corp.*,
   383 F.3d 1124 (9th Cir. 2004) ...............................................................10, 11

*MRO Commc'ns, Inc. v. AT&T Co.*,
   205 F.3d 1351 (9th Cir. 1999) ......................................................................13

*Netflix, Inc. v. Blockbuster, Inc.*,
   No. 06-02361, 2006 U.S. Dist. LEXIS 63154 (N.D. Cal. Aug. 22, 2006) ..............................20

*Operating Eng'rs' Pension Trust Fund v. Clark's Welding and Mach.*,
   No. 09-0044, 2009 U.S. Dist. LEXIS 69660 (N.D. Cal. July 28, 2009) .........................22, 23

*Qarbon.com Inc. v. eHelp Corp.*,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) ...................................................................................22

*Rambus v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008)...........................................................................................11, 12

*Research in Motion Ltd. v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ...........................................................................8, 9, 10

*Saunders v. Super. Ct.*,
   27 Cal. App. 4th 832 (1994) ...................................................................................................14

*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*,
   No. 05-00917, 2005 U.S. Dist. LEXIS 43533 (N.D. Cal., Oct. 4, 2005) .........................20,22

*Solis, v. Zenith Captial, LLC*,
   No. 08-4854, 2009 U.S. Dist. LEXIS 43350 (N.D. Cal. May 8, 2009).........................passim

*Sonobond Corp. v. Uthe Tech. Inc.*,
   314 F. Supp. 878 (N.D. Cal. 1970) .........................................................................................18

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993)................................................................................................................13

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*,
   754 F.2d 345 (Fed. Cir. 1985) ...............................................................................................20

*Swierkiewicz v. Sorema*,
   534 U.S. 506 (2002)................................................................................................................10

*U.S. v. E.I. duPont de Nemours & Co.*,
   351 U.S. 377 (1956)................................................................................................................10

*U.S. v. Microsoft Corp.*,
   253 F.3d 34 ..............................................................................................................................13

*Va. Panel Corp. v. Mac Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997) ...............................................................................................15

*Whitman v. Walt Disney Prod., Inc.*,
   263 F.2d 229 (9th Cir. 1958) .................................................................................................21

*Wong v. U.S. Immigration and Naturalization Serv.*,
   373 F.3d 952 (9th Cir. 2004) .............................................................................................21, 22

*Wyshak v. City Nat'l Bank*,
   607 F.2d 824 (9th Cir. 1979) .......................................................................................20, 21, 24

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE
          v
               CV 10-00032-WHA

**STATUTES**

35 U.S.C. § 286...................................................................................................................................21

Cal. Bus. & Prof. Code § 17200 ........................................................................................................14

Cal. Bus. & Prof. Code § 17206 ........................................................................................................14

Fed. R. Civ. P. 9(b)............................................................................................................................13

Fed. R. Civ. P. 12(f)....................................................................................................................20, 22

Fed. R. Civ. P. 42(b)..........................................................................................................................17

**OTHER AUTHORITIES**

Charles Alan Wright et al., Federal Practice and Procedure § 2389 (3d. ed. 2005)......................18

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE

vi

CV 10-00032-WHA

1    Defendants and Counterclaimants Source Photonics, Inc, MRV Communications, Inc.,

2    Oplink Communications, Inc., and NeoPhotonics Corporation (collectively "Defendants" or

3    "Counterclaimants") respectfully submit this Opposition to Plaintiff Finisar Corporation's

4    ("Finisar") Motion to Dismiss or, in the Alternative to Sever and Stay, Certain Counterclaims,

5    and to Strike Certain Affirmative Defenses.

6    **I.    <u>STATEMENT OF THE ISSUES</u>**

7         1.    Whether Counterclaimants have pled facts sufficient to state claims for

8    monopolization, attempted monopolization, unfair competition, patent misuse, and breach of

9    contract, such that Finisar's Motion to Dismiss should be denied.

10         2.    Whether the factual issues involved in the challenged Counterclaims overlap

11   those involved in the rest of the case such that Finisar's Motion to Sever and Stay those

12   Counterclaims should be denied.

13         3.    Whether Counterclaimants have given Finisar fair notice of the Affirmative

14   Defenses they plan to pursue such that Finisar's Motion to Strike should be denied.

15   **II.   <u>INTRODUCTION</u>**

16        Contrary to Finisar's arguments, Counterclaimants have pled with more than sufficient

17   specificity facts supporting the existence of antitrust injury.  Similarly, Counterclaimants have

18   pled facts sufficient to state claims for monopolization, attempted monopolization, and unfair

19   competition.  Finisar's Motion to Dismiss should accordingly be denied.

20        The court should similarly deny Finisar's Motion to Sever and Stay.  The Counterclaims

21   Finisar seeks to sever raise factual issues that are bound up with and overlap factual issues

22   arising from Finisar's patent infringement claims and Counterclaimants' patent-related

23   Counterclaims.[1]  Severing them would result in needless duplication of effort.

24        Finisar's Motion to Strike should likewise be denied.  Far from being clearly insufficient

25   as a matter of law under any set of facts the defendant might allege, Defendants' affirmative

26   _____

27   [1] Unless otherwise indicated, references to "Counterclaims" throughout this Opposition are to
     Counterclaimants' patent-unrelated Counterclaims.

28

defenses are highly relevant to the subject matter of this litigation and supported by allegations in Defendants' answers as well as their other submissions to date.  Granting Finisar's Motion would contravene this Court's liberal rules regarding pleading of affirmative defenses.

**III.     FACTS PLEADED IN DEFENDANTS' COUNTERCLAIMS**

Only the facts alleged in Defendants' Counterclaims, and not Plaintiff's arguments, determine the sufficiency of Defendants' pleading.  Defendants have alleged as follows:

Through its membership and participation in the SFF Committee, Finisar actively encouraged and participated in the creation and publication of the SFF-8472 Specification. Countercls. at ¶28.[2]  Of various possible methods of monitoring optical transceiver operating parameters, the SFF-8472 Specification adopted the one proposed and drafted  by Finisar. Countercls. at ¶¶28, 29, 51.  The market for optical transceivers is overwhelmingly, and increasingly, one that requires compliance with the SFF-8472 Specification.  Countercls. at ¶34. The SFF Committee's Patent Policy requires the following: before publication of a proposed specification that includes the use of a patent, the SFF Committee "shall receive from the patent holder" assurance that the patent holder will license the patented technology to applicants either (a) with no compensation, or (b) "under reasonable terms and conditions that are demonstrably free of unfair discrimination" (i.e., on RAND terms and conditions).  Countercls. at ¶31.  This Patent Policy clearly forbids including patented technology in a specification without a RAND or free license agreement from the patent holder.

Finisar promised the SFF Committee that it would license its technology required by implementations of the SFF-8472 Specification on "reasonable and non-discriminatory license terms consistent with the SFF patent policy."  Countercls. at ¶32.   For example, on August 2, 2001, Dan Kane of Finisar wrote the SFF Committee that "some implementations" of the SFF-8472 Specification may require Finisar intellectual property, and that Finisar intended to make available "to all interested parties a license whose scope includes exclusively the monitoring and

---

[2] For the convenience of the Court, Counterclaimants have referred to the Source Photonics' Amended Answer and Counterclaims for specific citations.

1   identification functions described in the proposed standard." *Id.* Mr. Kane promised that

2   Finisar's license would be made available on RAND terms and conditions. *Id.*

3          In reliance on Finisar's representations and assurances to license on RAND terms and

4   conditions, the SFF Committee acquiesced to Finisar's desire to incorporate its claimed but

5   incompletely disclosed intellectual property as part of the SFF-8472 Specification. Countercls.

6   at ¶¶29, 33. This reliance is apparent in the SFF-8472 Specification itself, which acknowledges

7   the possibility that implementation may require use of an invention covered by patent rights, but

8   explains that "[t]he patent holder has filed a statement of willingness to grant a license under

9   these rights on reasonable and non-discriminatory terms and conditions to applicants desiring to

10  obtain such a license." Countercls. at ¶31. Had the SFF Committee believed that Finisar would

11  renege on its RAND commitment, it would not have adopted the current SFF-8472

12  Specification, which Finisar claims requires use of its Digital Diagnostic patents. Countercls. at

13  ¶51. Instead, the SFF Committee would have adopted a specification incorporating alternative

14  technologies over which Finisar had no proprietary claim—either nonproprietary technology or

15  the proprietary technology of a different company. *Id.*

16         In fact, Finisar did not intend to honor its RAND commitment to the SFF Committee.

17  Countercls. at ¶35. This is evident from its subsequent licensing behavior. First, Finisar has

18  engendered the belief in the marketplace that its patents are essential to the SFF-8472

19  Specification, Countercls. at ¶42, and Finisar claims that to comply with the SFF-8472

20  Specification, a manufacturer of optical transceivers must practice at least some of Finisar's so-

21  called Digital Diagnostics patents, including at least its '775 and '668 patents in suit.

22  Countercls. at ¶28. Despite these claims, and despite its RAND commitment to the SFF

23  Committee, Finisar offered only discriminatory, unreasonable licensing terms to

24  Counterclaimants, and did so on a take-it-or-leave-it basis. Countercls. at ¶35.

25         Specifically, the licensing terms Finisar offered Counterclaimants were discriminatory in

26  that they were far less favorable than those received by other manufacturers of optical

27  transceivers—particularly those manufacturers who, in concert with Finisar, helped persuade the

28  SFF Committee to publish the SFF-8472 Standard. Countercls. at ¶37. The licensing terms

1    offered to Counterclaimants were also unreasonable, in that they: (1) greatly exceeded what

2    Finisar could have negotiated for its patents in the *ex ante* case (i.e., prior to the adoption of the

3    SFF-8472 Specification), and (2) exceeded industry norms and practices for equivalent

4    technology.  Countercls. at ¶36.  Finally, Finisar offered these discriminatory, unreasonable

5    licensing terms to Counterclaimants on a take-it-or-leave-it basis, leaving no room for

6    negotiation, and threatened that if the offer were declined, Finisar would thereafter increase its

7    licensing demands.  Countercls. at ¶35.  In short, Finisar did not honor its RAND commitments.

8    *Id*.

9         Acceptance of Finisar's discriminatory and unreasonable licensing demands would

10   effectively preclude Counterclaimants from competing in the market for optical transceivers.

11   Countercls. at ¶38.  Finisar has a dominant market share in the transceivers utilizing a digital

12   diagnostics interface that are compliant with the SFF-8472 Standard, and has the largest market

13   share of any competitor in the optical transceiver market.  Countercls. at ¶¶49-50.

14        As a result of Finisar's conduct, Counterclaimants must compete without a license from

15   Finisar in a market that: (1) overwhelmingly requires compliance with the SFF-8472

16   Specification, Countercls. at ¶34, and (2) has been conditioned by Finisar to believe its patents

17   are essential to that standard, Countercls. at ¶42.  Not surprisingly, Counterclaimants have

18   already lost customers and potential customers; past, present, and future profits; as well as

19   goodwill.  Countercls. at ¶58.  If left unchecked, Finisar's  preferential license grants coupled

20   with its attempts to extract supracompetitive royalties from companies like Counterclaimants

21   will have the calculated effect of reducing and thereby harming competition.  Countercls. at ¶40.

22   Counterclaimants will be unable to compete in the market for optical transceivers, which will

23   leave only Finisar and a few other companies (such as those receiving preferential licenses from

24   Finisar).  *Id.*  Downstream customers will have reduced choices, coordination among Finisar

25   and its preferential licensees will be facilitated, and competition will be significantly lessened.

26   *Id.*

27

28

IV.    **ARGUMENT**

A.    **Finisar's Motion to Dismiss Should Be Denied**

Finisar argues that Counterclaimants fail to adequately allege antitrust injury and plead "no facts" suggesting Finisar's licensing offers were unreasonable.  Mot. at 7.  As discussed below in Section 2, Counterclaimants have alleged that they are currently suffering antitrust injury in the form of lost customers and profits and, moreover, Finisar's arguments as to the reasonableness of the terms on which it offered licenses raise factual issues that are not appropriate for resolution on a motion to dismiss.  Sections 3 and 4 address Finisar's arguments that Counterclaimants have insufficiently alleged monopolization and attempted monopolization, respectively.  Mot. at 7.  As those sections will show, Counterclaimants' allegations are detailed and extensive, and are more than sufficient to allow the court to draw a reasonable inference that Finisar is liable to Counterclaimants.

1.    **The Applicable Standard For a Rule 12(b)(6) Motion to Dismiss**

A complaint will survive a motion to dismiss pursuant to Rule 12(b)(6) when, "taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility" standard does "not require heightened fact pleading of specifics," *id.*, and "is not akin to a 'probability requirement.'"  *Iqbal*, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.

2.    **Counterclaimants Have Pleaded Facts Establishing Their Antitrust Standing**

According to Finisar, Counterclaimants have inadequately pleaded antitrust injury because Finisar's licensing offer was "reasonable" and because Counterclaimants can not be "injured" by paying the "unreasonable royalties" Finisar demands.  Mot. at 8.  As a threshold matter, Finisar is contesting issues that must be determined by discovery.  By its very definition,

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE

5

CV 10-00032-WHA

the reasonableness of anything, including Finisar's license terms, is a question of fact. Similarly, almost any alleged injury by Counterclaimants merits factual inquiry. Neither reasonableness nor injury here can be resolved on a motion to dismiss, especially given the sufficiency of Counterclaimants' pleading.

Counterclaimants have amply pleaded the necessary elements. Antitrust injury is: (1) unlawful conduct, (2) causing an injury to [Counterclaimants], (3) that flows from that which makes the conduct unlawful, (4) that is of the type the antitrust laws were intended to prevent. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (9th Cir. 2003). Because Finisar has at most challenged the pleading sufficiency of the first, second, and fourth elements, Counterclaimants address those in turn below.

a)      **Counterclaimants Have Pleaded Facts Alleging Unlawful Conduct**

Counterclaimants merely need allege conduct that constitutes an antitrust violation. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055-56 (9th Cir. 1999). Finisar falsely promised the standard-setting body that it would license its "essential" technology on a RAND basis. It breached that promise by offering Counterclaimants licensing terms that were discriminatory, a fact conceded in Finisar's Motion ("royalty rates understandably differ"), Mot. at 11 n.4. Finisar also breached its RAND obligation by offering licensing terms that were unreasonable. This type of deception and subsequent bad act in a private standard-setting context harms competition and is actionable anticompetitive conduct. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314, 319 (3d Cir. 2007).[3]

_____

[3] The Court in *Broadcom* stated that:

> (1) in a consensus-oriented private standard-setting environment, (2) a patent holder's intentionally false promise to license essential proprietary technology on []RAND terms, (3) coupled with an S[S]O's reliance on that promise when including the technology in a standard, and (4) the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct. This holding follows directly from established principles of antitrust law and represents the emerging view of enforcement authorities and commentators, alike.

(continued…)

And although Finisar argues that Counterclaimants do not "plausibly allege that Finisar's license offer was unreasonable," the Motion's failure to acknowledge the allegations that Finisar's demanded royalty far exceeds the royalty it could have negotiated in the *ex ante* case, before incorporation of Finisar's patents in the Standard, and violates industry norms and practices, Countercls. at ¶36, simply underscores that "reasonableness" is a factual dispute that can not be resolved on the pleadings.

### b) Counterclaimants Have Pleaded Facts Alleging Finisar's Unlawful Conduct Caused Injury to Counterclaimants

Finisar's opposition runs on for pages arguing that Counterclaimants have not adequately alleged injury and that injury continuing into the future is a "logical impossibility." Mot. at 8. However, when a licensor whose technology is included in a standard plays fast and loose with its RAND obligation, its actions injure not only competition, but also competitors. *Broadcom*, 501 F.3d at 319 (defendant's anticompetitive licensing practices in contravention of its FRAND obligation caused harm to competitors).

Here, Counterclaimants allege injury resulting from Finisar's discriminatory licensing practices, affording favored licensees greatly preferential arrangements, but conditioning licenses to Counterclaimants on unreasonably high royalty rates. Finisar has convinced the optical transceiver marketplace that implementations of SFF-8472 require a Finisar license. Accordingly, customers choose the more risk-free option of purchasing from a manufacturer with a Finisar license than from a manufacturer lacking a license, albeit a license unlawfully withheld. Acceptance of Finisar's terms would effectively preclude Counterclaimants from competing in the market for optical transceivers because their products would be priced too high for customer acceptance. Countercls. at ¶38. Further, Counterclaimants have already lost customers and potential customers; past, present, and future profits; and goodwill as a result of Finisar having unlawfully withheld a license. Countercls. at ¶58.

_____

*Broadcom*, 501 F.3d at 314.

Finisar's insistence that Counterclaimants plead future injury is of no import.   The standing requirements, set forth in Section (1) above, relate to "injury," not "future injury."  *See Glen Holly Entm't, Inc.*, 352 F.3d at 372.  In any event, that this Court may someday invalidate Finisar's patents and exonerate Counterclaimants of Finisar's infringement accusations, or alternatively set a royalty consistent with Finisar's RAND obligations, cannot entirely cure the present and continuing harm to Counterclaimants resulting from Finisar's exploitation of the enhanced market power it gained based on its false promise to the SFF.

Counterclaimants have amply pleaded their injury--lost customers, profits, and goodwill--resulting from Finisar's unlawful conduct.

### (1)      Counterclaimants Have Alleged Their Willingness to Receive a RAND License to Finisar's Technology

Finally, Finisar argues that Counterclaimants "do not allege that they would be willing to accept a license on RAND terms."  Mot. at 9.  That Counterclaimants were willing to accept a license, on what they consider to be RAND terms and conditions, of Finisar's technology purportedly essential to the SFF-8472 Specification is implied by and apparent in their allegations.  The above discussions are predicated on that fact.   Counterclaimants expressly pleaded that they "relied on Finisar's and the SFF Committee's [RAND] assurances . . . in designing and manufacturing products compliant with th[e SFF-8472] Standard."  Countercls. at ¶33.  In short, Counterclaimants have pleaded sufficient facts to indicate that they were willing to accept a proper RAND license from Finisar, should such a condition be required.

### c)      Counterclaimants Have Pleaded Facts Alleging that Their Injury Is of the Type the Antitrust Laws Were Intended to Prevent

"The antitrust laws were enacted for 'the protection of *competition,* not *competitors.*' *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338, (1990) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)) (emphasis in *Brown Shoe*).  Counterclaimants have pleaded facts sufficient to allege injury not just to themselves as individual competitors, but to competition more broadly in the relevant markets.

1    In *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008), the

2    court considered this requirement of antitrust injury in the context of a RAND commitment.  In

3    that case, Motorola was allegedly the holder of patents essential to a standard, and Research in

4    Motion ("RIM") alleged the following injuries after Motorola allegedly reneged on its RAND

5    commitment:  (1) the threat of being forced to pay supracompetitive royalties, (2) uncertainty

6    created by Motorola's refusal to recognize its RAND obligations, (3) inability to obtain licenses

7    to Motorola's essential patents on RAND terms, and (4) injury to its business and property,

8    "specifically, the threat of imminent loss of profits, loss of current and potential customers, and

9    loss of goodwill and product image."  *Id.* at 793.  Analogous to Counterclaimants in the instant

10   case, RIM argued that Motorola's refusal to license on RAND terms left it in the "Catch-22" of

11   either acquiescing to non-RAND terms, or selling products that no longer appear compliant with

12   relevant standard and thereby suffering a "major competitive disadvantage."  *Id.*

13   The court agreed that incorporation of its technology into the standard put Motorola in

14   the position of a gatekeeper, whereby companies wishing to compete with Motorola must

15   acquire its permission (giving Motorola the power to eliminate all competition if it chose).  *Id.*

16   at 794.  This potential for abuse is precisely why the standard setting organization had required

17   Motorola to, effectively, permit competitors to "pass through the gates" on RAND terms.  *Id.*

18   By charging supracompetitive rates for its essential technology, Motorola would force its

19   competitors to charge higher rates in downstream markets, which would harm competition.  *Id.*

20   After finding support for its analysis in the jurisprudence of the Supreme Court and Third

21   Circuit, the district court stated:

22                  Both the Third Circuit, in *Broadcom*, and the Supreme Court, in
                    *Allied Tube*, have stated that standards, without the proper
23                  safeguards, are inherently anticompetitive.  It follows that when
                    an entity side-steps these safeguards in an effort to return the
24                  standard to its natural anti-competitive state, anti-competitive
                    effects are inevitable.  Motorola's breach of the commitments to
25                  [the standard setting organizations] as a result, is harmful to
                    competition.  RIM has properly pled harm to both itself and to
26                  competition.

27   *Id.* at 795-796.

28

As is discussed in the preceding sections, just like RIM, Counterclaimants have pleaded: (1) the threat of being forced to pay supracompetitive royalties, (2) uncertainty created by Finsiar's refusal to recognize its RAND obligations, (3) inability to obtain a license to Finsiar's allegedly essential patents on RAND terms, and (4) injury to their business and property, specifically, the threat of imminent loss of profits, loss of current and potential customers, and loss of goodwill.  They have thereby sufficiently pleaded that their injuries are of the type that the antitrust laws were intended to prevent.

### 3. Counterclaimants Have Pleaded Facts Supporting Their Monopolization Counterclaims

Cut to the quick, Finsar argues that any monopoly power it has arises through "force of its patents," and not through alleged misconduct before the SFF Committee, Mot. at 11.  This implicit concession of monopoly power supports, rather than undercuts, any argument that Counterclaimants have failed to plead the first element of a monopolization claim, namely, possession of monopoly power in a relevant market.  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).  The incorporation of a patent into a standard makes the scope of the relevant market congruent with that of the patent.  *Broadcom*, 501 F.3d at 315; *see also Research in Motion*, 644 F. Supp. 2d at 798 (citing *Broadcom*, 501 F.3d at 314) (agreeing with *Broadcom*'s analysis that a patent's incorporation into a standard confers Section 2 monopoly power because, unlike with non-essential patents, incorporation into a standard "by definition, eliminates alternative technologies.").   Moreover it enhanced whatever market power Finisar derived from the patents alone.  Countercls. at ¶41-43.  Accordingly, Counterclaimants' allegations that Finisar has obtained monopoly power through the SFF Committee's adoption of the SFF-8472 Specification and Finsar's possession of patents that it asserts are required by the Specifications, Countercls. at ¶¶42-43, suffice to plead that Finisar has monopoly power.  *See Broadcom*, 501 F.3d at 315-17 (concluding that claimants had sufficiently pleaded RAND-based monopolization claim); *Research in Motion*, 644 F. Supp. 2d at 792-93 (same).

Finisar's subsequent argument – that because Counterclaimants allegedly manufacture SFF-8472-compliant products without infringing Finisar's patents, then Finisar can not be a

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR, IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN COUNTERCLAIMS, AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSE

10

CV 10-00032-WHA

monopolist – avails them nothing.  Monopoly power does not mean a lack of competitors, but the ability to exclude competition or control prices.  *U.S. v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 391 (1956).  Counterclaimants have pleaded that Finisar represented to the SFF Committee and the optical transceiver marketplace that its intellectual property is essential to the SFF-8472 Specification, which for the reasons discussed immediately above confers monopoly power.  The precise scope and contours of Finisar's RAND commitment raise issues of fact to be decided at a later stage.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (stating that federal courts "rel[y] on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").

Counterclaimants also have pleaded the second necessary element of a monopoly claim, willful acquisition or maintenance of monopoly power through exclusionary conduct.  *MetroNet Servs. Corp.*, 383 F.3d at 1130.  Finisar obtained this monopoly by intentionally misrepresenting its intentions with respect to licensing on RAND terms.  Countercls. at ¶35.  After the SFF Committee adopted a standard incorporating its technology, Finisar breached its RAND obligations by offering licenses to Counterclaimants on discriminatory and unreasonable terms.  Countercls. at ¶¶33, 35-37.  A firm's deceptive RAND commitment to a standard-setting body combined with subsequent breach of that promise is anticompetitive conduct under Section 2 of the Sherman Act.  *Broadcom*, 501 F.3d at 314-15.

Finally, Finisar contends that "absent an allegation that the SFF Committee would have adopted a standard that did not implicate *any* company's intellectual property rights, the alleged conduct did not have an anticompetitive effect."  Mot. at 12 (emphasis in original).  To support this legal proposition, Finisar relies primarily on the Seventh Circuit's *Reigel* decision, but also cites the D.C. Circuit's decision in *Rambus v. FTC*, 522 F.3d 456, 464 (D.C. Cir. 2008).  *See id*.  Reference to *Reigel* is misplaced,[4] and *Rambus* supports, rather than undermines, the sufficiency of the monopolization counterclaim[5].

---

[4] In *Reigel*, the 7th Circuit considered the sufficiency of claims that defendants had engaged in Section 2 monopolization by fraudulently obtaining a patent.  *See Reigel*, 752 F.2d at 264.  For that theory of monopolization, the court noted the requirement that the invention sought to be (continued…)

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE

CV 10-00032-WHA

1   Moreover, as Finisar acknowledges, the Counterclaims do allege that the SFF

2   Committee could have adopted a wholly non-proprietary standard absent Finisar's false

3   promise, and Finisar does not deny that fact.  Discovery may show that the SFF Committee

4   would have done so.  That at the pleading stage Counterclaimants cannot foreclose the

5   theoretical possibility that monopoly power might have "shift[ed into different [and more

6   scrupulous] hands" absent Finisar's misconduct cannot absolve Finisar of the misconduct in

7   which Finisar actually engaged, by exploiting monopoly power obtained on the basis of a false

8   promise.

9       The factual allegations are more than sufficient to state a claim for monopolization.

10         **4.**       **Counterclaimants Have Pleaded Facts Supporting Their Attempted**

11                 **Monopolization Counterclaims**

12       To state a claim for attempted monopolization, Counterclaimants must allege: "(1) that

13   the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to

14   monopolize and (3) a dangerous probability of achieving monopoly power."  *Coal.  for ICANN*

15   _____

16   patented must not be patentable.  *Id.* at 265.  If a party fraudulently obtains a patent on an
unpatentable invention, it creates a patent monopoly that would not otherwise exist, which
harms competition.  *See id.*  If, by contrast, the invention was patentable, the patent monopoly

17   would still exist (although in different hands), so competition is unharmed.  *See id.*
Counterclaimants' theory of RAND-based monopolization fundamentally differs from the
fraudulent procurement theory at issue in *Reigel*, and removes the focus on whether the

18   standardized technology was proprietary.  Even had the SFF Committee adopted a different
company's proprietary technology, the Patent Policy dictates that a RAND agreement would

19   have been in place.  Unless all companies necessarily renege on their RAND obligations,
competition was harmed by Finisar's technology having been adopted.

20   [5]  In *Rambus*, the D.C. Circuit considered the antitrust implications of Rambus having allegedly

21   failed to disclose its essential intellectual property to a standard setting organization prior to the
adoption of a standard.  *Rambus*, 522 F.3d at 461.  The court emphasized that the claimant left

22   open the likelihood that Rambus's technology would have been standardized "*even if Rambus
had disclosed* its intellectual property."  *Id.* at 466 (emphasis in original).  The court concluded

23   that if the standard setting organization would have adopted Rambus's same technology,
Rambus's alleged deception would not have harmed competition.  *Id.* at 466–67.  Since the

24   claimant did not reject that possibility, it failed to demonstrate that Rambus's conduct was
exclusionary.  *Id.* at 467.  In stark contrast to the claimants in *Rambus*, Counterclaimants have

25   specifically alleged that but for Finisar's false promise, the SFF Committee would not have
adopted the current SFF-8472 Specification, which Finisar alleges contains its essential

26   technology.  Countercls. at ¶51.  Indeed, the SFF Committee's Patent Policy forecloses the
possibility of adopting proprietary technology in the absence of a RAND agreement.

27   Countercls. at ¶31.

28

*Transparency, Inc. v. VeriSign, Inc.*, 567 F.3d 1084, 1093 (9th Cir. 2009) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)).

Finisar maintains the factual allegations are insufficient on the dangerous probability element because Counterclaimants have "alleged no reason to believe" that Finisar's licensing terms will injure them or prevent them from competing, and because "substantial competition" will block Finisar from achieving monopoly power. Mot. at 13. However, the "dangerous probability element of an attempted monopolization claims is 'a particularly fact-intensive inquiry.'" *Broadcom*, 501 F.3d at 318 (*citing*, *U.S. v. Microsoft Corp*., 253 F.3d 34, 80 (D.C. Cir. 2001 (en banc)). Ordinarily this question should not be resolved at the pleading stage "unless it is clear on the face of the complaint that the 'dangerous probability' standard cannot be met as a matter of law." *Broadcom*, 501 F.3d at 318 (citing *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995)).

Here, the Counterclaims clearly allege dangerous probability. Eighty per cent of optical transceivers employ an interface subject to the SFF-8472 Specification, and the Specification will become even more important in the future. Countercls. at ¶¶40, 50. Finisar itself alleges that it controls patents that every manufacturer of optical transceivers must license to comply with the SFF-8472 Specification. Countercls. at ¶¶10, 28. Finisar has instilled among purchasers of optical transceivers the belief that the only means of complying with the SFF-8472 Specification is by employing Finisar's asserted patents. Countercls. at ¶43. Counterclaimants allege that Finisar already has the largest share of any competitor in the optical transceiver market, there are no reasonable substitutes, and Finisar's position is protected by high barriers to entry. Countercls. at ¶¶45, 50. *See MRO Commc'ns, Inc. v. AT&T Co.*, 205 F.3d 1351, *2 (9th Cir. 1999) (licensing requirements can be a barrier to entry).

Finisar has demanded discriminatory and unreasonable royalties that will make it impossible for Counterclaimants to continue to compete in that market. Countercls. at ¶49. On information and belief, Finisar has offered some market participants (including those who supported Finisar's efforts to incorporate its technology in the SFF-8472 Specification) licenses on more favorable terms, Countercls. at ¶37. But before conducting discovery about the terms

of these licensing agreements, Counterclaimants cannot know the extent to which such licenses – which are in the possession of Finisar and third parties, not Counterclaimants – will permit existing market participants to compete effectively against Finisar now or in the future. Even in cases subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), plaintiffs are not required to plead facts to which they lack access prior to discovery. *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996).

Accordingly, Counterclaimants have adequately pleaded the dangerous probability element, and Finisar's attempt to dismiss Counterclaimants' attempted monopolization claim should be denied.

### 5.   Counterclaimants Have Pleaded Facts Supporting Their Unfair Competition Counterclaims

California Business and Professions Code § 17200 *et seq.* allows civil recovery for any business act or practice that is "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code. §§ 17200, 17206. At base, Finisar argues that Counterclaimants have failed to state antitrust claims, and therefore have not pleaded an "unlawful" business practice under § 17200. Mot. at 15. However, as set forth in Sections 3 and 4 above, Counterclaimants have stated claims of monopolization and attempted monopolization under federal antitrust law, and accordingly have stated a claim of "unlawful" business practice under § 17200. *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994).

Finisar further argues that because Counterclaimants fail to state a claim of "unlawful" business practice under § 17200, they necessarily fail to state a claim of "unfair" business practice under § 17200. This position misconstrues California law. The California Supreme Court defines an "unfair" business practice as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws," *Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Thus, an unfair business practice encompasses conduct that merely threatens violation of the antitrust laws. Because Counterclaims have stated antitrust claims, those allegations also state claims under a standard that requires conduct to merely violate the policy or spirit of those laws.

*Cel-Tech* also teaches that an "unfair" business practice is something that "significantly threatens or harms competition." *See id.* Certainly Counterclaimants' allegations meet this standard. Counterclaimants have alleged that Finisar's monopolization of the digital diagnostics technology market and its subsequent efforts to license its technology on unreasonable and discriminatory terms threaten to force Counterclaimants out of the market, thereby harming Counterclaimants and competition. *See* Section 1(d) above.

Finisar lastly argues that Counterclaimants fail to establish standing under § 17200 because they have failed to articulate any loss of money or property. To the contrary, Counterclaimants have alleged such losses with specificity, as discussed in detail in Section 1(b) above.

**6.     Counterclaimants Have Pleaded Facts Supporting Their Patent Misuse Counterclaims**

Finisar argues that Counterclaimants state no claim for patent misuse because they have not alleged that Finisar "attempted to impermissibly broaden its patent rights" or "exceed[ed] the legitimate monopoly power granted by the digital diagnostics patent portfolio." Mot. at 17. Finisar is mistaken – this is precisely what Counterclaimants have alleged.

If Finisar's conduct "has the effect of extending [its rights under the patent] and does so with an anti-competitive effect," then the conduct will be subject to a multi-factor, fact-intensive analysis by the finder of fact to determine whether it imposes an unreasonable restraint on competition. *Va. Panel Corp. v. Mac Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). Such factors include "specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.*

Counterclaimants have sufficiently alleged that Finisar extended its rights under the patents, and that the extension had anticompetitive effects. As Counterclaimants allege, there are any number of ways to monitor transceiver performance. Countercls. at ¶52. Finisar's method is one among many. *Id.* Until the Committee adopted the Standard incorporating Finisar's technology, Finisar had no greater claim to the "right" way to monitor transceiver performance than any other patent-holder. *Id.* Now, in the wake of the Standard's adoption and

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE

15

CV 10-00032-WHA

1   Finisar's aggressive (and apparently successful) campaign to convince the market that use of its

2   patents is the exclusive means of complying with the Standard, Finisar has obtained monopoly

3   power in the market for technology used to diagnose the performance of optical transceivers.

4   Countercls. at ¶¶41-42, 52.

5          Finisar persuaded the Committee to adopt the Standard incorporating its technology by

6   falsely pledging to license that technology on RAND terms.  Countercls. at ¶¶32-33.  In the

7   normal course of standards-adoption, a company may acquire an enlarged monopoly by having

8   its technology incorporated in the standard.  The pledge to license on RAND terms ameliorates

9   the acquisition of such an expanded monopoly.  Here, Finisar circumvented the usual process

10   for preventing the expansion of monopoly power by misleading the Committee that adopted the

11   Standard.  This conduct extended Finisar's monopoly power well beyond the scope of that

12   granted by its patents, and its conduct constitutes patent misuse.

13          Finisar's argument that Counterclaimants' misuse claim fails because it is based on the

14   same allegations as their antitrust claims is unavailing.  Mot. at 17-18.  Patent misuse and

15   monopolization / attempted monopolization are distinct claims and, indeed, "[p]atent misuse is

16   viewed as a broader wrong than [an] antitrust violation[.]"  *C.R. Bard, Inc. v. M3 Systems, Inc.*,

17   157 F.3d 1340, 1372 (Fed. Cir. 1998).  Whether the allegations upon which the antitrust claims

18   are based are ultimately proved is irrelevant to whether those allegations support a claim for

19   patent misuse at this stage in the litigation, and *Hynix* is not to the contrary.  *Hynix*

20   *Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 988, 1030 (N.D. Cal. 2009) (dismissing

21   patent misuse defenses after defendants failed to prove allegations supporting them at trial).

22          Finally, Finisar argues that Counterclaimants' misuse claim must be dismissed because it

23   is an Affirmative Defense rather than an independent cause of action.  Mot. at 16.  If the Court

24   prefers that Counterclaimants style its misuse claim as an Affirmative Defense,

25   Counterclaimants will amend their pleadings in accordance with that preference.

26

27

28

### 7.    Counterclaimants Have Pleaded Facts Supporting Their Breach of Contract Counterclaims

Finisar argues that Counterclaimants fail to state a breach-of-contract claim because Counterclaimants allege that Finisar offered companies *other than* Counterclaimants licenses on RAND terms.[6]  Mot. at 18.  To state a breach-of-contract claim, Counterclaimants must sufficiently allege the identity of the contract and its breach.  *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489-90 (2006).  Finisar's argument ignores Counterclaimants' allegations that Finisar assumed contractual obligations *with respect to the Counterclaimants* when it pledged to the Committee to license its technology on RAND terms. Countercls. at ¶¶32-33.  And Finisar breached that obligation when it later offered Counterclaimants licenses on only unreasonable and discriminatory terms.  Countercls. at ¶¶35-37.  These allegations are sufficient to state a claim.

Finisar also argues that it has in fact offered Counterclaimants licenses on RAND terms. Mot. at 18.  This is directly contrary to Counterclaimants' allegations that Finisar offered Counterclaimants only unreasonable and discriminatory terms, *see* Countercls. at ¶¶35-37, and in any event, the reasonableness of Finisar's proposed terms is a factual issue that cannot be resolved at the motion-to-dismiss stage, prior to discovery.

### B.    Finisar's Alternative Request for the Severance and Stay of the Counterclaims Should Be Denied

Rule 42(b) of the Federal Rules of Civil Procedure permits district courts to order separate trials for claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  The district court has "broad discretion" in deciding whether to bifurcate a trial.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001).  "Rule 42 merely *allows*, but does not require, a trial court to

---

[6] In fact, Counterclaimants make no such allegation.  Counterclaimants allege that Finisar offered other manufacturers licenses on terms more favorable than those offered to Counterclaimants.  Countercls. at ¶37.  Counterclaimants did not allege that such terms were RAND terms.

1  bifurcate cases . . . ."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th

2  Cir. 2004).

3  　　Where patent and antitrust claims substantially overlap, it is not appropriate to bifurcate

4  them.  *See In re Theodor Groz & Sohne*, 1992 WL 188908, *2 (Fed. Cir. May 18, 1992)

5  (affirming district court's denial of bifurcation; "unlike *Innotron,* the patent and antitrust claims

6  in the present case are so interwoven as to preclude effective separation.");[7] *accord Sonobond*

7  *Corp. v. Uthe Tech. Inc.*, 314 F. Supp. 878, 882 (N.D. Cal. 1970).

8  　　District courts in other jurisdictions have reached similar conclusions.  For example, in

9  *Climax Molybdenum Co. v. Molychem LLC*, 414 F. Supp. 2d 1007, 1014 (D. Colo. 2005), the

10  court explained that the commonality between the alleged infringer's inequitable conduct

11  defense, and its fraudulent procurement antitrust claim "weighs against bifurcation," because

12  they are "predicated on the same allegation of fraud on the Patent Office."  *See also Gen. Tel. &*

13  *Elecs. Labs. Inc. v. Nat'l Video Corp.*, 297 F. Supp. 981, 983 (N.D. Ill. 1968) (denying

14  bifurcation because "[t]he matters in the [antitrust] counterclaims do not seem . . . so distantly

15  related [to the patent claim] that they should not be tried at the same time.").

16  　　Bifurcating the Counterclaims challenged by Finisar would cause substantial duplication

17  in the evidence considered at the respective trials.  For instance, Finisar's 2001 RAND

18  commitment and the amount of a reasonable, non-discriminatory license fee will be central to

19  determining damages and/or injunction in Finisar's patent case.[8]  Even in a bifurcated patent

20  _____

21  [7] *See also* Manual for Complex Litigation 4th § 33.23, at 616–17 (Fed. Judicial Center 2004)
("Bifurcation is appropriate . . . where the need to examine the same witnesses in both phases of
22  the separated trial would be minimal."); 9A Charles Alan Wright et al., *Federal Practice and*
*Procedure* § 2389 (3d. ed. 2005) ("Frequently, patent issues are mingled in a case with antitrust
23  or antitrust issues.  Sometimes it is advantageous to separate the patent issues from these other
issues for trial but if the circumstances of the particular case so indicate, separation will be
24  refused.") (internal citations removed).

25  [8] To set reasonable royalties for Finisar's patents, the court must consider the outcome of a
hypothetical negotiation between Finisar and Counterclaimants prior to the date of the first
infringement.  *See generally Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.
26  Supp. 1116 (S.D.N.Y. 1970).  Two of the patents-in-suit that Finisar claims are essential to the
SFF-8472 Specification—the '775 patent and the '668 patent—issued in or after 2006, which
27  was long after Finisar made its 2001 RAND commitment to the SFF Committee.  Consequently,
Finisar's RAND commitment would necessarily have played a substantial role in the
28  (continued…)

case, then, Counterclaimants must and would fully develop a factual record regarding the

meaning and scope of Finisar's RAND commitment to the SFF Committee, and what

constituted a RAND royalty in the market for SFF-8472-compliant optical transceivers,

including Finisar's licensing practices towards Counterclaimants and all other potential

licensees.  Those issues and factual record are also central to Counterclaimants' monopolization

and patent misuse claims, which Finisar now seeks to bifurcate.

Of the four issues Finisar contends will be subject to discovery exclusively in connection

with the antitrust claims, only one is not also implicated by the patent case, and that is the scope

of the relevant antitrust markets.[9]  *See* Mot. at 19–20.  The significance of the RAND issues to

both the patent claims and the antitrust claims places this case in the category of *Groz*, *Climax*,

and *General Telephone*: bifurcation will not confer the efficiency benefits typically associated

with splitting patent and antitrust claims.  Rather than create efficiencies, bifurcation  would

result in a large volume of duplicative evidence, and would undoubtedly require the Court to

adjudicate ongoing disputes over which RAND-related discovery relates to the patent claims

and which does not.  The Court should therefore allow discovery on the RAND claims to

proceed.  At minimum, even if the Court wishes to try the antitrust and relevant market issues

separately, such discovery is essential to the remedies aspects of the patent case and to the

breach of contract claim.

---

hypothetical negotiation essential to determining reasonable patent royalties.  *See Georgia-Pacific*, 318 F. Supp. at 1121 ("[T]he hypothetical negotiations would not occur in a vacuum of pure logic.  They would involve a market place confrontation of the parties, the outcome of which would depend upon such factors as . . . and any other economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license.").  With respect to injunction, Counterclaimants maintain that Finisar's RAND commitment prevents it from qualifying for injunction under the four-factor test applicable in patent cases.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (confirming that required factors include inadequate remedies at law and irreparable injury).  Because Finisar agreed to offer certain technology to any interested party on RAND terms, it cannot establish the inadequacy of monetary damages for that technology.

[9] That inquiry is simplified by the very nature of RAND-based antitrust claims.  *See Broadcom*, 501 F.3d at 315 ("It is the incorporation of a patent into a standard—not the mere issuance of a patent—that makes the scope of the relevant market congruent with that of the patent.").

## C. Finisar's Motion to Strike Defendants' Affirmative Defenses Should Be Denied

### 1. The Applicable Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) motions are generally disfavored, in part because of the "limited importance of pleading in federal practice." *See, e.g., Solis*, *v. Zenith Captial, LLC*, No. 08-4854, 2009 U.S. Dist. LEXIS 43350, at *5 (N.D. Cal. May 8, 2009) (citing Wright & Miller, Federal Practice and Procedure: Civil 3d § 1381); *Netflix, Inc. v. Blockbuster, Inc.*, No. 06-02361, 2006 U.S. Dist. LEXIS 63154, at *21-*22 (N.D. Cal. Aug. 22, 2006) (Alsup, J.). Thus, motions to strike are "generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *See, e.g.*, *Cont'l D.I.A. Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*, No. 08-02136, U.S. Dist. LEXIS 65908, at *4 (N.D. Cal. Aug. 26, 2008)

Although the Ninth Circuit has not ruled on the proper use of a Rule 12(f) motion to strike an affirmative defense, three other circuits have ruled it "should only be granted if the asserted defense is clearly insufficient as a matter of law under any set of facts the defendant might allege," and this Court has embraced that rule. *McArdle v. AT&T Mobility LLC*, 657 F. Supp. 2d 1140, 1149 (N.D. Cal. 2009) (citing Second, Fifth, and Eighth Circuit case law); *Solis*, 2009 U.S. Dist. LEXIS 43350 at *5; *Ganley v. County of San Mateo*, No. 06-3923, 2007 U.S. Dist. LEXIS 26467, at *10 (N.D. Cal. Mar. 22, 2007); *Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, No. 05-00917, 2005 U.S. Dist. LEXIS 43533, at *5 (N.D. Cal., Oct. 4, 2005); *Equal Employment Opportunity Comm'n v. Interstate Hotels, L.L.C.*, No. 04-04092, 2005 U.S. Dist. LEXIS 45000, at *4 (N.D. Cal. Apr. 14, 2005) (Alsup, J.).

In pleading an affirmative defense, a defendant must give the plaintiff fair notice of the nature of the defense the defendant intends to pursue. *See, e.g*., *Securimetrics*, 2005 U.S. Dist. LEXIS 43533, at *5 (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). However, "[u]nless the defense is one that falls under Rule 9, there is no requirement that a

party plead an affirmative defense with particular specificity." *Solis*, 2009 U.S. Dist. LEXIS 43350, at *6 (citing *Wong v. U.S. Immigration and Naturalization Serv.*, 373 F.3d 952, 969 (9th Cir. 2004)). "Thus, in some cases, simply pleading the name of the affirmative defense is sufficient." *Id.* The key to the sufficiency of a defense is notice; if, in naming a defense, the plaintiff is put on notice of the defendant's intent to pursue such a defense, it is sufficiently pleaded. *Ganley*, 2007 U.S. Dist. LEXIS 26467, at *5-*6.

### 2. Defendants' Affirmative Defenses are Sufficiently Pled

#### a) 35 U.S.C. § 286

Finisar argues that Defendants' Section 286 defense is "insufficient as a matter of law" because "patent actions . . . have no 'statute of limitations.'" While it is true that § 286 "cannot properly be called a 'statute of limitations' in the ordinary sense," *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*, 754 F.2d 345, 348 (Fed. Cir. 1985), in its application, 35 U.S.C. § 286 "is the equivalent of the statute of limitations." *Whitman v. Walt Disney Prod., Inc.*, 263 F.2d 229, 231 (9th Cir. 1958). Regardless of how the defense is styled, Defendants' answers put Plaintiff on notice that they intend to rely on the bar to recovery in § 286 for any alleged infringement committed more than six years prior to the filing of Plaintiff's complaint.

A statute of limitations defense will ordinarily withstand a motion to strike in this Circuit if the defendant identifies the statute upon which the defense relies. *See, e.g.*, *Wyshak*, 607 F.2d at 827; *Solis*, 2009 U.S. Dist. LEXIS 43350, at *5. As Defendants made specific mention of Section 286 in their answers, the Court should deny Plaintiff's motion to strike this defense.

#### b) Prosecution History Estoppel

Finisar broadly alleges infringement of the patents-in-suit, and does not limit its allegations to literal infringement. *See, e.g.*, Compl. at ¶¶38-40. Defendants pleaded prosecution history estoppel to preserve their right to raise the defense should Finisar argue infringement by equivalents. Finisar argues that Defendants "do not set forth the elements of [prosecution history estoppel]" and "allege no facts to satisfy [them]." Mot. at 22. Finisar fails to appreciate that "fair notice" does not necessarily require that a party "plead all the elements of a prima facie case." *Wong*, 373 F.3d at 969. This is particularly true when, as here, the

elements of the defense are clear and how they are factually supported depends on the plaintiff's infringement arguments and the development of the factual record throughout the case.

### c)   Estoppel

Finisar argues that "Defendants allege no facts to satisfy [the elements of estoppel] and their bare bones and conclusory references to [estoppel] are insufficient notice." Mot. at 22.  To the contrary, Defendants' answers provide Finisar with facts supporting estoppel, and these allegations satisfy the notice pleading standard that this Court has "broadly construed."  *See Ganley*, 2007 U.S. Dist. LEXIS 26467, at *17.

Factual allegations in the remainder of the answer and counterclaims, as well as those outside the answer, including facts alleged in an opposition to a Rule 12(f) motion, are relevant to determining whether a motion to strike is warranted.  *See, e.g.*, *Securimetrics*, 2005 U.S. Dist. LEXIS 43533, at *15-*16; *Operating Eng'rs' Pension Trust Fund v. Clark's Welding and Mach.*, No. 09-0044, 2009 U.S. Dist. LEXIS 69660, at *7 (N.D. Cal. July 28, 2009); *Ganley*, 2007 U.S. Dist. LEXIS 26467, at *7.  Defendants' estoppel defense stems from Finisar's letters to Defendants threatening enforcement of one or more of the patents-in-suit.  *See* Am. Answer at ¶34.  Finisar thereafter gave no indication that it would sue and did not sue until January 2010.  *See* Countercls. at ¶10.  Defendants relied on Finisar's misleading silence, continuing to make and sell the allegedly infringing products, and would be materially prejudiced if Finisar were now allowed to sue where its silence indicated it would not.

Contrary to Finisar's assertion, *ABB Robotics* does not establish that a claimant must allege the elements of estoppel to provide fair notice; instead, it states the elements that "are required to *prove* estoppel."  *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062 (Fed. Cir. 1995) (emphasis added).  Notice pleading does not require defendants to plead all material elements of their affirmative defenses.  *See, e.g., Securimetrics,* 2005 U.S. Dist. LEXIS 43533, at *12-*13; *Solis*, 2009 U.S. Dist. LEXIS 43350, at *6; *Ganley*, 2007 U.S. Dist. LEXIS 26467, at *5-*6; *see also Wong*, 373 F.3d at 969 *but see Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004).  Instead, they must merely provide plaintiffs notice of the defenses they intend to pursue.  For example, this Court has previously declined to strike

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE TO SEVER AND STAY, CERTAIN
COUNTERCLAIMS, AND TO STRIKE CERTAIN
AFFIRMATIVE DEFENSE

22

CV 10-00032-WHA

even "bare-bones" affirmative defenses when they were sufficient to put the plaintiff on notice of the defendant's intent to prove that defense, and the plaintiff failed to demonstrate that the defendant would be unable to support the defense.  *See, e.g., Cont'l D.I.A. Diamond Prods.*, U.S. Dist. LEXIS 65908, at *6; *Ganley*, 2007 U.S. Dist. LEXIS 2646, at *17.

Because Defendants alleged the affirmative defense of estoppel, and their answers, as well as subsequent filings, supply the factual allegations underlying this defense, Defendants put Finisar on notice of their intent to pursue an estoppel defense.

### d)       Laches

Finisar cites *Gasser Chair* for the proposition that a claimant must allege facts that show each element of laches to successfully plead laches.  However, *Gasser Chair* does not discuss pleading requirements; instead, it states the elements that a "defendant must prove by a preponderance of the evidence" to *establish* laches.  *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995).  Again Finisar fails to recognize that fair notice does not require that a party plead all the elements of an affirmative defense.

This Court has held that even a "boilerplate" laches defense provides fair notice.  *See McArdle*, 657 F. Supp. 2d at 1151.  Defendants' laches defense is at least as sufficient as that upheld in *McArdle*, and their answers further allege facts that provide fair notice of the nature of the laches defense that Defendants intend to pursue.  Defendants' affirmative defense of laches is based on Finisar's unreasonable and inexcusable delay in filing suit since it first knew of reasonably should have known of its claim against Defendants, as evidenced by Finisar's letters to Defendants alleging that they infringed, one or more of the patents-in-suit.  *See* Am. Answer at ¶34.  Finisar did not file its suit until January 2010, *see* Countercls. at ¶10, and in the interim, Defendants continued to make and sell the allegedly infringing products.  Defendants would be materially prejudiced if Finisar were now allowed to sue where its silence indicated it would not.

This case is still in its infancy, and discovery is likely to shed light on Defendants' proof of their affirmative defenses.  *See Operating Eng'rs' Pension Trust Fund*, 2009 U.S. Dist. LEXIS 69660, at *7 (denying motion to strike estoppel and laches defenses on this basis).  What

is of import at this juncture is that Defendants have put Finisar on notice of their intent to pursue a laches defense.

### e)   Other Defenses

Defendants do not oppose striking their reservation of other defenses, recognizing that if they have the right to raise additional defenses during the course of this case, the Court will allow them to do so at that time.

### 3.   If the Court Finds Any of Defendants' Affirmative Defenses are Insufficiently Pled, Defendants Should be Granted Leave to Amend

This Court has consistently held that if an affirmative defense is stricken, leave to amend should be freely given as long as there is no prejudice to the opposing party.  *See, e.g.*, *Wyshak*, 607 F.2d at 826; *Solis*, 2009 U.S. Dist. LEXIS 43350, at *5.  *See also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citations and internal quotation marks omitted).

Given the early stage of the case and the fact that discovery is only just beginning, Defendants' opportunity to amend their affirmative defense will not prejudice Finisar. Moreover, the deadline to amend pleadings in set out in the Case Management Statement issued in this case is nearly two months away.  As such, the Court should allow Defendants to amend their affirmative defenses should it grant Finisar's motion to strike.

## V.   CONCLUSION

For the foregoing reasons, Counterclaimants respectfully request that Finisar's Motion be denied.  In the alternative, should this Court find Counterclaimants' allegations as to any claim insufficient, Counterclaimants hereby request leave to amend.

1    DATED:  April 29, 2010                Respectfully submitted,

2

3                                          By  /s/ Alan H. Blankenheimer
                                           ALAN H. BLANKENHEIMER
4                                          COVINGTON & BURLING LLP
                                           Attorneys for Defendants and Counterclaimants
5                                          SOURCE PHOTONICS, INC., MRV
                                           COMMUNICATIONS, INC., NEOPHOTONICS
6                                          CORPORATION, and OPLINK
                                           COMMUNICATIONS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28